STATE of Iowa, Appellee,

v.

Ricky Laverne WILSON, Appellant.

No. 86–781.

Supreme Court of Iowa.

May 13, 1987.

As Corrected May 13, 1987.

Charles L. Harrington, Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Patrick McCormick, Co. Atty., and Gregory E. Jones, Asst. Co. Atty., for appellee.

Considered by McGIVERIN, P.J., and LARSON, CARTER, WOLLE and LAVORATO, JJ.

LAVORATO, Justice.

Following a jury trial, the defendant Ricky Laverne Wilson was found guilty of three crimes: first-degree murder, first-degree robbery, and second-degree theft. *See* Iowa Code §§ 707.1, .2(1)-(2), 711.1–.2, 714.1(1), .2(2) (1983). The court sentenced Wilson to life in prison for the murder conviction and added concurrent indeterminate twenty-five and five-year terms for the other convictions.

On appeal from his convictions and sentence, the defendant asserts three grounds

for reversal: (1) the district court abused its discretion in overruling the defendant's pretrial motion for change of venue; (2) the district court erred in excluding evidence of the victim's alleged proclivity toward aberrant sexual behavior and pedophilia; and, (3) the district court abused its discretion in ordering the defendant to wear leg shackles during his trial.

Viewing the facts in the light most favorable to the jury's verdict, we believe the jury could have found the facts as follows. On November 10, 1981, Raymond Smith was murdered in his Sioux City home. The police found Smith's body lying at the foot of the basement stairs of his house. Smith had been stabbed thirty-one times in the chest and had sustained a skull fracture due to a severe blow or blows to the head. Underneath his men's trousers and sweater, the deceased was found to be wearing a dress and ladies' bloomer-type underwear.

On November 12, 1981, police found papers, including a payroll check, savings bonds, and insurance papers, belonging to the deceased. The papers were found on the bank of the Missouri River near a barge-loading dock.

The police also searched the deceased's home and, upon entering three locked rooms upstairs, discovered large quantities of pornographic material: magazines, photographs and posters depicting nude children and adults, and sexual manipulation devices. The deceased also possessed several life-size dolls and articles of children's clothing. There were fifty-nine nonpornographic photographs of children in the deceased's living room, more pornographic magazines in the basement, and a calendar in the kitchen on which the birthdays of various children were noted. Evidence of these pornographic items and of the fact that the deceased was wearing ladies' clothing was the subject of the State's motion in limine, which was granted by the court.

On June 7, 1983, Ricky Laverne Wilson was charged with the murder, robbery, and theft of Raymond Smith. At trial in April 1986, Wilson's accomplice, Donald Fueston, testified he and Wilson went to Smith's home to rob him on November 10, 1981. Wilson was acquainted with Smith and knew that Smith did not like to keep his money in banks. He also knew Smith possessed at least one handgun. Wilson and Fueston visited with Smith for a while. Then Wilson hit Smith in the head with a tire iron and stabbed him repeatedly with a paring knife. Wilson pushed the body downstairs, and he and Fueston left the house.

Fueston and his girlfriend, who had been waiting outside Smith's house in a car, also testified they and Wilson drove to the river. There, Wilson and Fueston went through a security box that Wilson had taken from Smith's house.

Wilson's former jailmate testified Wilson admitted murdering Smith.

Wilson's defense at trial was that he did not commit the murder and was not with Fueston and his girlfriend on November 10, 1981. Wilson did not remember where he was on that evening.

## I. *Change of Venue.*

The defendant, who was incarcerated pending trial in this matter, allegedly escaped from the Woodbury County jail on July 13, 1985. He was recaptured in Sioux City two days later on July 15. On August 6, 1985, the defendant moved for a change of venue pursuant to Iowa Rule of Criminal Procedure 10(10)(b). Rule 10(10)(b) provides that a court shall grant a change of venue where the evidence introduced in support of the motion shows "that such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county...." Wilson alleged that local media coverage of his escape from custody was so prejudicial that he could not receive a fair trial in Woodbury County.

On August 28, 1985, the district court, Judge Michael S. Walsh presiding, heard the arguments of counsel and received evidence regarding the venue motion. The

court overruled the motion for change of venue on September 4, 1985.

A defendant seeking reversal of a conviction on the basis of a denial of a motion for change of venue "must show either actual prejudice on the part of the jury or must show that the publicity attending the case was so pervasive and inflammatory that prejudice must be presumed." *State v. Robinson,* 389 N.W.2d 401, 403 (Iowa 1986). The defendant makes no claim of actual prejudice. Thus, the defendant has the burden to show the reports are so pervasive and inflammatory that prejudice must be presumed.

We view the record de novo to determine whether the district court abused its discretion in denying the request for change of venue. *Id.* The media coverage to which the defendant objects was reported between July 13, 1985, and August 8, 1985. Media accounts that are factual and informative in tone do not support a claim that they must be presumed to have created prejudice against a defendant. *See State v. Spargo,* 364 N.W.2d 203, 208 (Iowa 1985). We agree with the district court that the newspaper articles and television broadcasts are, with three exceptions, factual in tone and not inflammatory.

The first nonfactual report involves television and newspaper coverage of the county sheriff's statement that Wilson is "one of the most dangerous inmates we've had here since I've been sheriff." The district court found the remark is not inflammatory.

The second nonfactual report is a comment that the defendant has a violent history. The court found that remark was made only once and was made in the context of a television news report regarding the defendant's escape while he was still at large.

The third nonfactual broadcast is a commercial promotion for station KTIV's television news program. The thirty-second commercial aired twenty-nine times from July 19 to July 23, 1985. The commercial gives examples of the station's on-the-scene coverage of various recent events, including the defendant's escape and recapture.

The commercial refers to the defendant as "convicted murderer Rick Wilson." Regarding this coverage, the court stated:

> [T]here is no showing that this particular incident of misinformation had any effect on the public to the extent that there is a substantial likelihood that the defendant would not receive a fair and impartial trial. The particular incident can be remedied by appropriate voir dire, and the court is confident that it will become obvious to any members of the prospective jury who heard the commercial promotion and believed it, that it is incorrect because the trial of the defendant has not yet taken place.

We believe these three nonfactual reports are inflammatory and, to some extent, are prejudicial. The reports are not so pervasive, however, as to warrant a presumption of prejudice. The district court found the defendant failed to show he could not receive a fair trial, "[g]iven the large population of Woodbury County, the opportunity to draw a jury from a large panel of prospective jurors, and the opportunity to challenge for cause as well as to strike prospective jurors [the defendant] may feel are prejudiced as a result [of the adverse publicity]."

Although the publicity is inflammatory and contains prejudicial material, it does not rise to the level of pervasive and inflammatory publicity that would deny the defendant a fair trial. *See State v. Marr,* 316 N.W.2d 176, 181 (Iowa 1982).

The defendant also presented fifteen affidavits to the court in support of his motion for change of venue. The defendant's attorney allegedly handed the affidavits to the first people he saw on August 27, 1985. The affidavit form states the affiant personally heard or read certain listed news reports or advertisements which would influence the affiant's "opinion and thinking about the defendant and could influence my [the affiant's] attitude as to his guilt or innocence." Of the fifteen affiants, ten admitted hearing the factual reports or the sheriff's opinion that Wilson is one of the most dangerous in-

mates ever incarcerated in Woodbury County. Four admitted hearing that Wilson is a convicted murderer, and one had no personal knowledge of the media coverage. One of the affiants, whom the court recognized as a local criminal defense attorney, adds that in his opinion the coverage "would no doubt influence prospective jurors."

We agree with the district court's conclusion that these affidavits, which are not the result of an independent scientific survey, are neither helpful nor persuasive in determining what the general public may have heard about the defendant from the news media coverage.

The district court noted that the trial, which at that time was set for October 1, 1985, would take place at least two months after the news coverage at issue. The defendant does not allege that the publicity continued past August 8, 1985. We have stated in earlier cases that the separation in time from the publicity to trial may be sufficient to dissipate any prejudicial effect that might have been created by the adverse publicity. *See, e.g., State v. Cornelius*, 293 N.W.2d 267, 269 (Iowa 1980) (two-month interval); *State v. Pelelo*, 247 N.W.2d 221, 223 (Iowa 1976) (three-month interval); *State v. Loney*, 163 N.W.2d 378, 382 (Iowa 1968) (eleven-week interval). The district court could properly consider the separation in time in deciding whether the defendant would receive a fair and impartial trial. In fact, the trial took place in April 1986, eight months after the news reports relating to the defendant's alleged escape. This eight-month interval is strong evidence that any prejudice created by the adverse publicity was dissipated by the time of trial.

Furthermore, the second day of trial the State moved for a mistrial and continuance because of a front-page article appearing in a local newspaper that morning. The headline read "Defense Says Perversions Led to Murder," and referred to the evidence, which had been suppressed by the court, found in the victim's home and on his person. The court made this remark regarding the State's motion for mistrial: "I can

tell you right now that if it's necessary to declare a mistrial, this case ... wouldn't be continued for several months. My feeling is that it wouldn't be tried here in Woodbury County." The defendant, however, resisted the motion for mistrial, which the court denied after polling the jury. In light of the record presented, we must question whether the defendant genuinely desired a change of venue at the time of trial in April 1986.

We distinguish the present case from *State v. Robinson*, 389 N.W.2d 401 (Iowa 1986), a recent case in which the defendant showed us "[t]here was a barrage of unmistakable warning signals that few people had an open mind on the questions of defendant's guilt." 389 N.W.2d at 403. *Robinson* was tried in a sparsely populated rural county. Voir dire revealed that "[n]early everyone on the jury panel had heard or read about the case and many were acquainted with the prosecution witnesses." *Id.* In addition, all panel members except one knew something about the case, and ten of the first sixteen questioned had already formed an opinion. *Id.*

The present case originated in a densely populated metropolitan area. The voir dire was not reported; the record shows the defendant said nothing at trial to reasonably alert the court he was persisting in his request for a change of venue. *See Robinson*, 389 N.W.2d at 403.

In consideration of all the factors set out above, and based upon our independent evaluation of the record, we conclude the district court did not abuse its discretion in overruling the defendant's motion for change of venue. The defendant failed to show that such degree of prejudice existed in Woodbury County that he could not receive a fair and impartial trial.

## II. *Motion in Limine.*

Prior to trial, the State filed a motion in limine seeking to preclude the defendant from introducing any evidence that the deceased, Smith, was a collector of child pornography and was wearing women's clothing at the time of his death. The State argues that the evidence is irrelevant to any

legitimate issue at trial, and that any probative value of the evidence is substantially outweighed by its prejudicial effect. *See* Iowa R. Evid. 403. The defendant contends the evidence is relevant to rebut the theory that robbery was the motive for killing Smith, and to show that Smith's life-style "made his death by violent means extremely and highly probable."

The court sustained the motion in limine, stating that even if the evidence were relevant, its probative value is substantially outweighed by its prejudicial effect. The court suggested, however, that the defendant could renew his request to present the evidence during the trial, at which time the court would entertain an offer of proof outside the presence of the jury.

An offer of proof was made during the testimony of a police officer. The officer opined that the upstairs rooms of the deceased's home had been "occupied by the victim and by children in the neighborhood." The officer observed in the rooms a school desk, children's drawings, naked and dressed dolls, and a canister that appeared to contain urine hidden under a bed. The defendant renewed his argument that the evidence was relevant to show that another person, perhaps Fueston, was motivated to murder Smith because of his alleged aberrant sexual behavior and pedophilia.

The defendant submitted to the court an exhibit consisting of thirty-eight photographs of the pornographic material found in Smith's house, and of the victim's body clothed in a dress and ladies' underpants. After considering the exhibits, the court declined to overrule the motion in limine. The defendant was not permitted to introduce to the jury any of the evidence in question.

Evidence is admissible if it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Iowa R.Evid. 402, 403. The admissibility of evidence is a matter for the exercise of the district court's discretion. *See State v. Chadwick,* 328 N.W.2d 913, 917 (Iowa 1983). We will reverse the district court's determination on the issue of admissibility only when we find a clear abuse of discretion. *State v. Roth,* 403 N.W.2d 762, 765 (Iowa 1987).

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Iowa R.Evid. 401.

The evidence of Smith's large pornography collection is not relevant to any issue at trial. The defendant offers no record to demonstrate a reasonable link between the items found in the deceased's home or on his person and the murder. *See Roth,* 403 N.W.2d at 766. The defendant makes no showing that anyone in the community, including Fueston and Wilson, was even aware of the existence of the items locked in upstairs rooms in Smith's house, or of the fact that he sometimes wore women's clothing underneath his regular clothes.

■ Evidence offered by a defendant tending to incriminate another must be confined to substantive facts and create more than a mere suspicion that such other person committed the offense. *See State v. Harrington,* 349 N.W.2d 758, 761 (Iowa 1984). The defendant's attempt to show that some unknown person may have had a motive to murder Smith, other than an intent to rob him, falls short of creating even a mere suspicion and, indeed, is based on a highly speculative premise.

■ Apart from the issue of questionable relevancy of the evidence sought to be excluded by the motion in limine, we hold that the district court did not abuse its discretion in excluding the evidence under the balancing process articulated in Iowa Rule of Evidence 403. The evidence has little or no probative value, but would be highly prejudicial to the State if admitted. The jury could be led to conclude that Smith was killed by someone who believed he had molested children, or that Smith's life-style was so generally reprehensible he deserved to die. The potential for improper consideration of the evidence substantially outweighs any probative value it might have.

Furthermore, had the defendant prevailed in his resistance to the motion in limine, this trial rapidly could have disintegrated into two trials, the second issue being whether the deceased was in fact a child molester or pedophile. *See Roth,* 403 N.W.2d at 765. Admission of the evidence would confuse the issues and mislead the jury. The district court could properly consider these matters in concluding the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* Iowa R.Evid. 403.

The defendant argues that even if the evidence is inadmissible, it can be admitted to show the physical circumstances surrounding the commission of the crime. The defendant's reliance on *State v. Duncan,* 312 N.W.2d 519 (Iowa 1981) is misplaced.

> The rule in such cases appears to be that where the acts are all so closely related in point of time and place, and so intimately associated with each other that they form a continuous transaction, the whole transaction may be shown....

*State v. Drake,* 219 N.W.2d 492, 494 (Iowa 1974) (quoting *State v. Holoubek,* 246 Iowa 109, 113, 66 N.W.2d 861, 863 (1954)). The rule is intended to apply where the evidence sought to be admitted "is beneficial to accurately ascertain and describe what actually was happening at the time the alleged crime occurred." *State v. Thompson,* 365 N.W.2d 40, 43 (Iowa App. 1985).

The defendant does not show any connection between the evidence in question, most of which was located in locked upstairs rooms, and the commission of the crimes. Even if he had shown such a connection, the district court did not abuse its discretion in sustaining the State's motion in limine based on the conclusion that the probative value of the evidence is substantially outweighed by its prejudicial effect.

We find no basis for reversal on this ground asserted by the defendant.

### III. *Leg Shackles.*

Finally, the defendant asserts he was denied the right to a fair trial because the court required him to wear leg shackles during the trial.

■ A criminal defendant is presumed innocent until his guilt is established beyond a reasonable doubt. Thus, a defendant is entitled to the indicia of innocence in the presence of the jury. *United States v. Samuel,* 431 F.2d 610, 614 (4th Cir.1970).

Cases dealing with the physical indicia of innocence, as it pertains to physical restraints during the criminal trial process, may be divided into distinct factual categories. *See Kennedy v. Cardwell,* 487 F.2d 101, 104–05 (6th Cir.1973).

The first category includes those cases in which the defendant is shackled in the courtroom during trial. In some of these cases, the court decides before trial that the defendant must be restrained. *See, e.g., State v. Heathman,* 224 Neb. 19, 23–24, 395 N.W. 2d 538, 541 (1986) (leg shackling upheld); *State v. Tolley,* 290 N.C. 349, 370–71, 226 S.E.2d 353, 369 (1976) (leg shackling upheld). In other cases, shackles become necessary during the course of the trial because of the defendant's disruptive behavior. *See, e.g., Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

The second category involves those cases in which members of the jury briefly and inadvertently observe the defendant being moved to and from the courtroom area in shackles during a trial recess. *See, e.g., State v. Ellis,* 350 N.W.2d 178, 183 (Iowa 1984) (conviction affirmed); *State v. Kile,* 313 N.W.2d 558, 560 (Iowa 1981) (conviction affirmed). In cases of this type, the defendant has the burden to show the incident prejudicially affected the jury or that his ability to present his defense was impaired as a result of his being seen in shackles. *See Kennedy,* 487 F.2d at 109; *Kile,* 313 N.W.2d at 563.

To avoid confusion, courts must distinguish the pure shackling cases, those where the defendant was actually tried in shackles, from the second category of cases involving inadvertent observation. *See Kennedy,* 487 F.2d at 109. The present case is a pure shackling case.

The decision to impose physical restraints upon a defendant during trial lies within the informed discretion of the district court and will not be disturbed on appeal absent a clear showing of abuse of discretion. *See United States v. Hack*, 782 F.2d 862, 867 (10th Cir.1986) (leg and hand shackling upheld).

A defendant is usually not restrained in the courtroom in front of a jury in order to prevent the creation of prejudice in the minds of jurors. *Ellis*, 350 N.W.2d at 183. Shackling of a defendant should be avoided because (1) it may interfere with the defendant's thought processes and ease of communication with counsel, (2) it intrinsically gives affront to the dignity of the trial process, and most importantly, (3) it tends to create prejudice in the minds of the jurors by suggesting that the defendant is an obviously bad and dangerous person whose guilt is a foregone conclusion. *See Kennedy*, 487 F.2d at 105–06; *Samuel*, 431 F.2d at 614–15; *Tolley*, 290 N.C. at 366, 226 S.E.2d at 367. If a practice gives rise to an unmistakable brand of guilt or creates an unacceptable risk the jury may consciously or subconsciously be influenced in their deliberations, the practice is inherently prejudicial. *Holbrook v. Flynn*, 475 U.S. 560, ——, 106 S.Ct. 1340, 1347, 89 L.Ed.2d 525, 535–36 (1986); *State v. Coy*, 397 N.W. 2d 730, 735 (Iowa 1986). It is clear that requiring a defendant to appear in shackles before a jury is inherently prejudicial.[1] *See Kennedy*, 487 F.2d at 107; *Tolley*, 290 N.C. at 366, 226 S.E.2d at 367; *see also Holbrook v. Flynn*, 475 U.S. at ——, 106 S.Ct. at 1345, 89 L.Ed.2d at 534; *Coy*, 397 N.W.2d at 734–35.

On rare occasions, however, shackling a defendant may be justified despite the fact that some prejudice will occur. *Illinois v. Allen*, 397 U.S. at 344, 90 S.Ct. at 1061, 25 L.Ed.2d at 359. In certain instances, the defendant's right to the physical indicia of innocence before the jury must bow to the competing rights of participants in the courtroom and society at large to a safe and orderly trial. *Samuel*, 431 F.2d at 615. The burden is on the State to show the necessity for physical restraints. *Kennedy*, 487 F.2d at 107; *Heathman*, 395 N.W.2d at 541; *Tolley*, 290 N.C. at 366–67, 226 S.E.2d at 367.

The day before trial commenced the court addressed the State's request for security precautions. After hearing argument by counsel and the testimony of a deputy sheriff, the court decided the defendant's legs should be shackled. The court stated for the record that the shackling was necessary "in view of the past history of the defendant ..., and to preclude any possibility that he might make a renewed effort [to escape]." The record shows the defendant assaulted a deputy sheriff and forcibly locked other jail employees in a cell in making his prior escape. Other relevant factors before the district court were the defendant's age, the seriousness of the first-degree murder charge, and the tension likely to arise from the inevitable presence of several members of the media and a large audience at trial. *See generally Tolley*, 290 N.C. at 368, 226 S.E.2d at 368 (list of factors a court may consider in exercising discretion).

The district court is to be commended for its care in minimizing the prejudice to the defendant. The defendant's hands were free. He was brought into the courtroom before the jury entered and remained at the counsel table until the jury left. In addition, after the opening statements of counsel, the court gave preliminary standard instructions to the jury on the presumption of innocence and the standard of reasonable doubt.

We believe the procedure followed by the district court in this case should be utilized by all courts that find it necessary to employ security measures that are inherently prejudicial. The district court, preferably before the trial begins, should place in the record in the presence of the defendant and

---

1. We overrule our decision in *State v. Brewer*, 218 Iowa 1287, 254 N.W. 834 (1934), to the extent it suggests otherwise. In *Brewer* we stated "this court cannot presume that the defendant was prejudiced because he was handcuffed [to an officer during trial]." 218 Iowa at 1299, 254 N.W. at 840.

counsel the reasons for shackling and give them an opportunity to make their objections known. *See Tolley*, 290 N.C. at 372, 226 S.E.2d at 370–71. A formal hearing is not required, but when the stated reasons for shackling are controverted by the defendant, it would be the better practice to hold a formal hearing and to make specific findings of fact as a basis for the court's discretionary ruling. *Id.*, at 372–73, 226 S.E.2d at 371.

The court, upon agreement of the defendant, should instruct the jury against bias before taking evidence. We encourage courts to employ the least prejudicial and least conspicuous security measures possible under the circumstances. This approach to the shackling of a defendant will produce the most equitable result in balancing a defendant's right to a fair trial against the competing interests of participants in the courtroom and society at large in preserving a safe and orderly trial.

In light of the record presented in this appeal, we find no abuse of discretion by the court in its decision to require the security measures it deemed appropriate under the circumstances.

IV. *Disposition.*

Finding no error or abuse of discretion, we affirm the defendant's convictions and sentence.

AFFIRMED.