**STATE of Iowa, Appellee,**

v.

**James Michael GREEN, Appellant.**

No. 88–1342.

Court of Appeals of Iowa.

March 27, 1990.

Raymond E. Rogers, State Appellate Defender, and B. John Burns, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Mark Joel Zbieroski, Asst. Atty. Gen., James Smith, County Atty., and Maggi Moss, Asst. County Atty., for appellee.

Heard by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Defendant James Michael Green appeals from his conviction, following a jury trial, of first-degree murder. Defendant raises three issues on appeal: (1) whether the trial court abused its discretion by denying defendant's motion for a change in venue; (2) whether the trial court erred in admitting evidence that defendant had assaulted and robbed a homosexual male approximately two months prior to the incidents involved herein; and (3) whether defendant received ineffective assistance of counsel as a result of his trial counsel's failure to object to certain instructions. We affirm.

On the evening of February 12, 1988, the victim, Franklin Kenneth Eaton, a Des Moines school teacher, and a friend took in a show at the Ingersoll Dinner Theatre, after which they drove to a bar which Eaton frequented and stayed there until it closed at 2:00 a.m. The two drove to "the gay loop" in Des Moines, stopping only briefly before Eaton drove his friend back to his friend's apartment. Eaton told his friend he was going home, but instead returned to the gay loop. At approximately 3:00 a.m., a dark Camaro automobile pulled behind Eaton's Fiero. A passenger exited the Camaro and entered Eaton's Fiero and then returned to the Camaro. Shortly thereafter, the two vehicles left the gay loop. Defendant drove a 1968 Camaro matching the description of the one seen on the gay loop during the early morning hours of February 13.

Eaton's daughter, Jennifer, returned to her father's apartment at 2:00 a.m. and went to her bedroom. Later, at some point in the early morning hours, she heard her father tell another person that he had to shut her door. When Jennifer got up the next morning at approximately 6:00 a.m., she noticed certain items missing from the apartment. Fearing that a burglary had occurred, Jennifer attempted to awaken her father, but discovered he was dead. It was subsequently ascertained that Eaton had been stabbed to death.

On the Wednesday following Eaton's death, two garbage disposal workers found the murder weapon, a butcher knife, in a

dumpster at the Oliver Plaza in Des Moines. Law enforcement personnel subsequently learned that defendant's 1968 Camaro matched the description of the automobile seen on the gay loop the evening of Eaton's death. A search of a residence shared by defendant and Gary Titus turned up a variety of items taken from Eaton's apartment, including Eaton's wallet.

As one might well expect, Eaton's murder and the ensuing investigation generated several news accounts. Additional news coverage occurred following defendant's arrest on February 22, 1988. On April 19, 1988, defendant filed a motion for change of venue. Following a hearing, the district court denied defendant's motion. On June 21, defendant filed a motion for a juror survey at State expense, arguing that such a survey was necessary for him to prove actual prejudice. The next day, June 22, defendant renewed his motion for change of venue, arguing that news coverage of Titus's trial prevented defendant from receiving a trial by impartial jurors in Polk County. Following a hearing, the trial court overruled both motions on July 7, 1988. Defendant's jury trial commenced on August 8, 1988.

Defendant testified at his trial that he and his friend, Titus, met between 8:30 and 10:00 p.m. on the evening of February 12 and drove to the downtown loop area of Des Moines. While in the loop area, defendant and Titus consumed three 12-packs of beer between approximately 10:00 p.m. and 2:30 a.m. The two then left the loop area in order to secure additional amounts of beer. Due to the late hour, however, the two were unable to do so. The two men next drove to the gay loop in hopes of finding more alcohol. There they first saw Eaton's Fiero with the distinctive personal license plates, "I PARTY." After defendant pulled his 1968 Camaro behind Eaton's car, Titus exited defendant's vehicle and entered Eaton's. Defendant circled the block in his automobile before stopping to pick up Titus. Defendant and Titus then followed Eaton back to his West Des Moines apartment.

Defendant further testified that once at Eaton's apartment, Eaton provided defendant and Titus with alcoholic beverages. At some point, Eaton put on a pornographic videotape and exited the room. Eaton reentered the room clad only in his underwear and was sniffing amyl nitrates from a bottle. Defendant and Titus joined Eaton in sniffing the contents of the bottle. Subsequently, according to defendant, Eaton asked the two men to join him in bed, but they refused. A scuffle between Eaton and Titus ensued, at which point defendant stabbed Eaton with a knife that defendant had secreted in Eaton's bedroom. After stabbing Eaton, defendant admitted he helped Titus remove various items from the apartment.

The State, in addition to evidence of Eaton's homicide, introduced the testimony of Dan Render concerning a prior assault and robbery committed on him by defendant and Titus. Render testified that on December 27, 1987, he had been approached by defendant and Titus in the gay loop. Following a discussion concerning going to another location ostensibly for the purposes of having a sexual encounter, the men drove to another part of Des Moines. There, Render was beaten and robbed by Titus and defendant.

The trial court submitted instructions on first-degree murder and the lesser-included offenses of murder in the second degree, manslaughter, and involuntary manslaughter. The trial court also explained to the jury, in instruction No. 10, about the concept of guilt by aiding and abetting in the commission of an offense. In submitting the lesser-included offenses, the trial court instructed solely under the theory of aiding and abetting in their commission. Defendant admits he raised no objection to these instructions.

I.

Defendant first contends the district court erred in overruling his motion for change of venue. His argument, which centered on the pretrial publicity surrounding the case, is that because of the extensive media coverage, he could not receive a

fair trial in Polk County. We note initially a trial court's decision overruling a motion for change of venue will not be reversed absent an abuse of discretion. *See State v. Harris,* 436 N.W.2d 364, 367 (Iowa 1989); *State v. Wagner,* 410 N.W.2d 207, 210 (Iowa 1987); *State v. Wilson,* 406 N.W.2d 442, 445 (Iowa 1987). Reviewing the record de novo, we conclude no such abuse of discretion occurred.

■ Iowa Rule of Criminal Procedure 10(10)(b) mandates the granting of a motion for change of venue if the trial court determines

> that such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county. . . .

In order to obtain a reversal of a conviction premised on a denial of a change of venue, defendant must demonstrate " 'either actual prejudice on the part of the jury or must show that the publicity attending the case was so pervasive and inflammatory that prejudice must be presumed.' " *Wilson,* 406 N.W.2d at 445 (quoting *State v. Robinson,* 389 N.W.2d 401, 403 (Iowa 1986); *see Harris,* 436 N.W.2d at 367; *State v. Spargo,* 364 N.W.2d 203, 207 (Iowa 1985).

■ Defendant claims his defense counsel was unable to show actual prejudice due to the trial court's denial of his motion for a public opinion survey at state expense.[1] The use of such surveys has been recognized as providing a viable means of demonstrating that the publicity attending a case is pervasive and inflammatory. *See State v. Nebinger,* 412 N.W.2d 180, 184 (Iowa App.1987). But we do not agree defendant was limited in any manner in his effort to show actual prejudice. The trial court permitted the defendant to employ an individualized, fully sequestered, and rather rigorous voir dire. The type of public opinion survey suggested here would do little to demonstrate actual prejudice since the survey would only show general public

awareness and attitudes about the case, and not the actual knowledge or attitudes of the jurors called upon to hear the case.

We find no error on the part of the trial court in overruling defendant's motion for a public opinion survey. Intensive voir dire is the better approach for showing actual prejudice on the part of the jury toward the accused. *Cf. State v. Weatherford,* 416 N.W.2d 47, 52 (S.D.1987) ("Voir dire examination is better forum for ascertaining the existence of hostility towards the accused"). Since this approach was open to defendant, we can discern no error in overruling his motion for a public opinion survey at public expense. Further, we note the following comment by the Iowa Supreme Court:

> We are unwilling to say an impecunious defendant is entitled to anything which a wealthy one could purchase. The mere fact that one might profligate in spending his own money furnishes no justification for an indigent to unnecessarily expend public funds.

*State v. Campbell,* 215 N.W.2d 227, 229 (Iowa 1974); *see State v. Walters,* 426 N.W.2d 136, 140 (Iowa 1988).

We now turn our attention to the issue of whether the trial court abused its discretion in denying defendant's motion for change of venue. Defendant's argument on this point is that the publicity surrounding the case was so pervasive and inflammatory that prejudice must be presumed. The publicity which defendant points to occurred during two distinct periods. During the first period of February 14 to 28, 1988, the media publicity centered on the investigation of Eaton's death and the arrests of defendant and Titus. The second period of publicity, June 9 to 15, 1988, arose in conjunction with Titus's trial. The last of these two periods was nearly two months prior to the commencement of defendant's trial.

■ Mere exposure to news accounts does not, standing alone, create a substantial likelihood of prejudice. *Harris,* 436

---

1. We note defendant's claim is based solely on his sixth amendment right to counsel and not on Iowa Rule of Criminal Procedure 19(4).

Rule 19(4) permits an indigent defendant to secure the services of an expert or other necessary witness at state expense.

N.W.2d at 367; *Walters,* 426 N.W.2d at 139. While the pretrial publicity involved in this case was fairly extensive, the vast majority was factual and informative in nature and tone. Such news accounts do not support an assertion that they created a climate of prejudice against defendant. *See Wilson,* 406 N.W.2d at 445. Additionally, we note the passage of time between the news accounts and defendant's trial was of sufficient length to dissipate any prejudicial effect which may have been generated by the pretrial publicity. *See Nebinger,* 412 N.W.2d at 180; *Spargo,* 364 N.W.2d at 208; *State v. Cornelius,* 293 N.W.2d 267, 269 (Iowa 1980). Finally, our review of the voir dire in this matter fails to disclose pervasive and inflammatory media coverage such that would necessitate a change of venue. While forty-four of forty-nine original panelists did admit to being exposed to media coverage of the crime, only two of the forty-nine had formed an opinion regarding defendant's guilt or innocence. This unquestioningly demonstrates the lack of the type of pervasive and inflammatory news coverage which would poison the county's jury pool and prevent defendant from receiving a fair trial. The trial court committed no abuse of discretion in denying defendant's motion for change of venue.[2]

## II.

Defendant also challenges the decision of the trial court in admitting evidence regarding the assault and robbery of Dan Render. Iowa Rule of Evidence 404(b) provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**2.** We note for the benefit of the bench and the bar, the following statement from *State v. Robinson,* 389 N.W.2d 401, 404 (Iowa 1986):

> We take this opportunity to again point out that Iowa Rule of Criminal Procedure 10(10)

As this court declared in *State v. Williams,* 445 N.W.2d 408, 409 (Iowa App.1989):

> Under rule 404(b), evidence of prior acts may be admissible (1) if the evidence is relevant to a legitimate issue involved in the case and (2) there is clear proof the individual against whom the evidence is offered committed the prior act.

Additionally, if the court determines the evidence to be relevant, the court "must then decide whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice." *State v. Plaster,* 424 N.W.2d 226, 229 (Iowa 1988).

The defendant was charged with murder in the first degree. The evidence that defendant and Titus had assaulted and robbed Render only two months before was extremely relevant as to the issues of intent, motive, and plan. Render's testimony related a scenario closely resembling defendant's actions with Eaton. We will set forth but a brief summary of that scenario.

On December 27, 1987, Render was approached by the defendant and Titus in the "gay loop" area of Des Moines. The men engaged in a discussion about going someplace else for a sexual encounter. At a location away from the gay loop area, a struggle took place between Render and Titus. Render was able to escape, but lost his coat. Moments later, the defendant approached and assaulted Render and asked for his money. After Render gave the defendant his money, the defendant left. Render's coat was later recovered from defendant's apartment.

In both incidents, defendant and Titus drove to the gay loop and arranged to later leave with a homosexual male. The clear import of Render's testimony is that Titus and defendant lured Eaton back to his apartment under the pretext of engaging in homosexual acts, all the while intending to rob Eaton. We determine the questioned testimony is relevant.

> now provides a convenient system for implementing change of venue. Where there has been extensive pretrial publicity a trial court should be more willing than in prior years to look favorably upon such a motion.

The second prong of *Williams* is also satisfied here by Render's identification of defendant as one of two individuals who beat and robbed him in December. Finally, we find the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *See* Iowa R.Evid. 403. As such, we find the trial court did not abuse its discretion in admitting the challenged evidence.[3]

### III.

 The final issue is defendant's assertion that his trial counsel's failure to preserve error on the issue of the adequacy of the jury instruction constituted ineffective assistance of counsel. Ineffective assistance claims are generally reserved for postconviction hearings, but may be determined on direct appeal when the record adequately presents them. *See State v. Hildebrandt*, 405 N.W.2d 839, 841 (Iowa 1987); *State v. Risdal*, 404 N.W.2d 130, 131 (Iowa 1987); *Nebinger*, 412 N.W.2d at 192. We find the record here to be insufficient for this court to determine defendant's claim. In so doing, we are mindful that "[e]ven a lawyer is entitled to his day in court, especially when his professional reputation is impugned." *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978). Defendant's trial counsel may well have had good reason for each inaction which defendant now asserts was error. At a postconviction proceeding a full evidentiary hearing may be had, and defendant's trial counsel will have the opportunity to explain his actions.

AFFIRMED.

DONIELSON, P.J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I respectfully dissent. I find the instruction should have been objected to. I find no conceivable strategic reason not to object to it. I would reverse and remand to the trial court.

The majority does not discuss the instruction problem in its opinion. Defendant and the State agree the evidence is that defendant himself killed Eaton. There is no evidence defendant was an aider or abettor. Rather, the evidence was that Titus was the aider and abettor.

Defendant was entitled to have second-degree murder, manslaughter, and involuntary manslaughter submitted as lesser included offenses. *See State v. Jeffries*, 430 N.W.2d 728, 737–41 (Iowa 1988). The problem was the jury was instructed that they could consider the lesser included offenses only if they found defendant aided and abetted Titus in the killing.

Defendant was clearly prejudiced by this submission. It is obvious the mistake occurred because the file, including the instructions, from Titus's case was used, with defendant's name exchanged for Titus's. There is no explanation for the error in submission.

Defendant should have a new trial.

---

3. We note that the defendant objected to the use of a cautionary instruction that would have explained the limited purpose of the evidence now

under dispute. The trial court granted the defendant's request not to give the cautionary instruction.