# IN THE COURT OF APPEALS OF IOWA

No. 23-1598
Filed January 23, 2025

**JAMES ROBERT ERNST II,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

James Ernst appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Karmen Anderson, Des Moines, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Chicchelly, P.J., Buller, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**BOWER, Senior Judge.**

James Ernst II appeals the district court's denial of his application for postconviction relief (PCR) following his 2016 conviction for first-degree murder. Ernst claims his trial counsel was ineffective by failing to strike a juror for cause, failing to locate and depose State and defense witnesses, failing to object to the prosecutor's closing statement that he asserts amounted to misconduct, failing to object to a defense witness who testified while attired in inmate clothing along with handcuffs and shackles, and for failing to request a spoliation instruction concerning a lost video. Ernst also raises a claim of ineffective assistance of PCR counsel. Upon our review, we affirm the denial of Ernst's PCR application.

## I. *Background Facts and Proceedings*

In its ruling affirming Ernst's conviction on direct appeal, our court set forth the following background facts:

> On the evening of December 5, 2014, Ernst rented a white Lincoln MKX in Cedar Rapids and drove to Waterloo accompanied by his friend Iviontae Jackson. Around 1:00 a.m., Jackson and Ernst met up with friends Shaumara Taylor and Katie Werner. For a reason never resolved at trial, the group stopped at a local convenience store. At the convenience store, Taylor got in a physical fight with a woman, Angela Norris, who had arrived at the convenience store in another car. Campbell was also at the convenience store. Campbell and his friends stopped to watch the fight between Taylor and Norris. One of Campbell's friends called other people about the fight; before long, there was a group of over fifteen people surrounding the combatants. Ernst testified he did not know anyone in this crowd except his three friends. The fight was recorded by the store's security camera.
> The fight between Taylor and Norris subsided after members of the crowd intervened. However, after several minutes, the two began fighting again. The second fight was not in the view of the security camera. What happened next is the subject of dispute.
> According to the State's witnesses, one of the bystanders, the father of Norris's child, tried to pull Taylor away from Norris. There was a verbal argument between some of the men watching the fight,

Ernst fired his handgun, and Campbell was shot and killed. None of the State's witnesses observed any physical fighting between the men.

According to Ernst, Ernst saw a man push Taylor in an attempt to break up the fight. Ernst then grabbed Taylor to drag her away from the fight. As Ernst dragged Taylor away from the fight, she continued to argue with the man who had pushed her. As Ernst approached his car, he heard a cocking sound, turned, and saw two men with their hands at their waists. Ernst testified he held up his hand and said, "Stop, this is just a girl fight. This ain't got nothing to do with me." One of the men, later identified as Campbell, allegedly replied, "No, fuck that. I'm Crip. I'm on that." Campbell then punched Ernst in the jaw, stepped back, and reached toward his belt. Ernst had a permit to carry a concealed weapon and had a gun on his person. Ernst pulled out his handgun and fired five shots at Campbell at close range. Ernst claims he aimed low to disable Campbell but recoil forced the gun higher. Ernst stopped firing when he saw Campbell put his hand to his chest. Ernst and his three friends fled the scene.

After Ernst fled the scene, Campbell's friends drove Campbell to a local hospital. He was pronounced dead shortly after arrival at 1:51 a.m. Campbell had been shot twice, once in the chest and once in the neck. Meanwhile, Ernst returned to Taylor's apartment for roughly thirty minutes before leaving town with Jackson. Ernst went to Dubuque to visit a female friend. He then drove to Davenport to visit his sister. Finally, he returned to Cedar Rapids. The State alleged Ernst attempted to evade police for some period of time after the shooting. Ernst denied this. Regardless, the police were unable to locate Ernst for several weeks. Ultimately, Ernst was arrested January 1, 2015, for the murder of Campbell.

*State v. Ernst*, No. 16-0628, 2017 WL 5185403, at *1 (Iowa Ct. App. Nov. 8, 2017).

In affirming Ernst's conviction, we determined his claims of prosecutorial misconduct presented significant issues and thus preserved his ineffective-assistance-of-counsel claims for postconviction-relief proceedings. *Id.* at 5.

## II. Standard of Review

"We generally review a district court's denial of an application for [PCR] for errors at law." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021). However, when

a basis for relief involves a constitutional violation, such as claims of ineffective assistance of counsel, our review is de novo. *Id.*

### III. Discussion

Ernst raises six claims on appeal, five related to his trial counsel's representation, and one related to his PCR counsel's representation. To prove his counsel ineffective, Ernst must prove (1) counsel's performance fell below objectively reasonable standards and (2) if counsel had acted differently, there would have been a reasonable probability of a different outcome at trial. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008).

*A. Counsel's Failure to Strike a Juror for Cause.* Ernst first claims counsel was ineffective for not striking a juror, J.T., for cause after she stated she "had an Orintheo as a student many years past." Ernst assumes that Orintheo Campbell, the victim, is the same person J.T. was referring to from years ago. Ernst asserts this connection demonstrates an inference of implicit bias and warranted J.T.'s removal. Although the follow-up questioning by counsel to this statement from J.T. was limited, counsel did ask if there would be anything which would affect her ability to sit on the jury. J.T. responded, "I don't think so." Even if a potential juror indicates they were acquainted with a party, witness, or victim to a case, if the juror states they will be unbiased in their duties, it is not improper for counsel to refrain from striking that juror. *See Reynolds v. State*, No. 06-1272, 2007 WL 2257083, at *4 (Iowa Ct. App. Aug. 8, 2007); *see also State v. Sommer*, 86 N.W.2d 115, 124–25 (Iowa 1957). Potential bias from a juror "may be actual or implied." *State*

*v. Webster*, 865 N.W.2d 223, 236 (Iowa 2015). "Implied bias arises when the relationship of a prospective juror to a case is so troublesome that the law presumes a juror would not be impartial." *Id.*

Ernst cites a California case, *People v. Romero*, which determined a juror should have been discharged from trial because of a previous academic relationship with the victim. 222 Cal. Rptr. 3d 322, 328 (Cal. Ct. App. 2017). The court found implicit bias was shown because the juror stated she remembered the victim and could recall her academic performance as "good." *Id.* at 779.

But *Romero* is distinguishable from this case. J.T. stated she "had an Orintheo as a student" and "the name stuck with [her]." She did not indicate any opinion about the victim's academic performance or any personal opinion on the victim's character. This does not rise to a troublesome relationship with the victim where the law "presumes a juror would not be impartial." *Webster*, 865 N.W.2d at 236. More importantly, there is no evidence in the record showing Campbell was the same Orintheo which J.T. taught. At the PCR hearing, trial counsel stated he determined J.T. did not show any prejudice through her statements, and she never confirmed Campbell was her student. The decision to forgo striking J.T. was a strategic one, and Ernst has failed to show prejudice. *See Dixon v. State*, No. 16-2195, 2018 WL 3471833, at *5 (Iowa Ct. App. July 18, 2018) ("It is well established that we will not find counsel ineffective if counsel made a reasonable strategic decision to take or forego particular action.").

*B. Counsel's Failure to Locate and Depose Witnesses.* Ernst next claims trial counsel failed to depose State's witnesses prior to trial, which would have enhanced cross-examinations. "An inadequate investigation by defense counsel

can be ineffective assistance." *Brown v. State*, No. 03-1741, 2004 WL 2672255, at *3 (Iowa Ct. App. Nov. 24, 2004) (citing *Thomas v. Lockhart*, 738 F.2d 304, 308 (8th Cir. 1984)). If counsel makes strategic trial decisions after a "less than complete investigation" those decisions "must be based on reasonable professional judgments which support the particular level of investigation conducted." *State v. Virgil*, 895 N.W.2d 873, 879 (Iowa 2017) (quoting *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001)). Ernst asserts his counsel's strategy to forgo depositions of State witnesses to preserve a "big reveal" at trial demonstrating Campbell had reached for a gun prior to Ernst shooting him was unwarranted, as it was already known the defense was justification.

Counsel testified at the PCR trial he discussed with co-counsel this strategy to forgo depositions after reviewing the minutes of testimony. The defense was in possession of discovery materials, including sworn statements from twelve witnesses. Counsel determined these sworn statements were useful, and they had the witnesses "pinned down." Because defense counsel felt deposing these witnesses would be counterproductive, tipping off prosecutors to lines of questioning to be used at trial, they decided to refrain from taking them. Trial counsels' strategy to forgo taking depositions was "based on reasonable professional judgments," which supported the degree of their investigation. *See Ledezma*, 626 N.W.2d at 143. Thus, counsel did not breach an essential duty.

Ernst also claims trial counsel was ineffective for failing to locate three witnesses to investigate whether each had knowledge which would bolster his defense. Ernst asserts the witnesses were present and eyewitnesses to the incident. Counsel testified their investigator was diligent in attempting to locate

witnesses helpful to the defense, based on Ernst's statements and the police report. At the PCR trial, Ernst did not present testimony from these witnesses or any evidence showing what these witnesses knew about the incident. Ernst did not show there was "a reasonable probability" if counsel had contacted these witnesses, "the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). Thus, Ernst was not prejudiced by this claim. This analysis also applies to Ernst's additional claim that counsel failed to interview three other witnesses, one of which ignored attempts to contact her. Again, Ernst presented no testimony or evidence of the witnesses' purported knowledge of the incident at the PCR trial, and thus he was not prejudiced.

*C. Defense Counsel's Failure to Object to Prosecutorial Misconduct*. Ernst next claims his counsel should have objected to statements in the prosecutor's closing argument, asserting the prosecutor misstated the law which was improper. Concerning the alleged misstatement of law, Ernst takes issue with the prosecutor stating Ernst had alternative courses of action that undermined his justification defense. When a court reviews a nonconstitutional error, the analysis must determine whether "the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice." *State v. Paredes*, 775 N.W.2d 554, 571 (Iowa 2009) (citation omitted). Under this analysis, "[w]e presume prejudice . . . and *reverse* unless the record affirmatively establishes otherwise." *Id.* (quoting *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006)).

Ernst's trial counsel did not fail to perform an essential duty by failing to object to the prosecutor's alleged misstatement of law. "Counsel may draw conclusions and argue permissible inferences which reasonably flow from the

evidence presented." *State v. Reeves*, No. 13-0908, 2014 WL 2884864, at *4 (Iowa Ct. App. June 25, 2014) (quoting *State v. Carey*, 709 N.W.2d 547, 554 (Iowa 2006)). Although neither Iowa Code section 704.1 nor section 704.3 require a person to retreat in a self-defense circumstance, the prosecutor inferred Ernst could have left the scene of the incident. While the prosecutor stated Ernst "had an obligation and requirement to seek that alternative course of action," the statement Ernst finds objectionable only referred to his ability to get into the car and leave. The alleged misstatement of law referred to the availability of alternative courses of action. Ernst's trial counsel did not fail to perform an essential duty to object to the statement, as the prosecutor's statement was a reasonable inference from the evidence. *See Reeves*, 2014 WL 2884864, at *4. We concur with the PCR court's finding:

> The statements made by the prosecutors in closing argument about the law on justification and whether Petitioner had an alternative course of action available to him involved an interpretation of the evidence that was contrary to Petitioner's interpretation of the evidence, but they did not involve misstatements about the law on the availability of an alternative course of action. Petitioner's trial counsel had no duty to make a meritless objection . . . .

Turning to Ernst's second assertion, he takes issue with the prosecutor emphasizing defense witnesses had tailored their testimony by viewing security footage while the State's witnesses had not. Prosecutorial misconduct includes but is not limited to "questioning witnesses about other's deceit, distorting testimony, making unsupported statements during closing argument . . . [and] making other inflammatory or prejudicial statements about the defendant." *State v. Coleman*, 907 N.W.2d 124, 139 (Iowa 2018) (alteration in original) (citation omitted). While prosecutors are allowed latitude during closing arguments in

making inferences and conclusions based on evidence, they may not convey personal beliefs. *State v. Graves*, 668 N.W.2d 860, 874 (Iowa 2003) (citing *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975)). Prosecutors may attack a defense theory as long as they do not make inflammatory or denigrating comments of a personal nature. *State v. Veal*, 930 N.W.2d 319, 336 (Iowa 2019).

Relating to both a claim of prosecutorial misconduct or a claim of prosecutorial error, Ernst must prove the misconduct or error resulted in prejudice which denied him a fair trial. *See Graves*, 668 N.W.2d at 869. In determining if Ernst was prejudiced by the conduct, we look to several factors including "(1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct." *Id.* (internal citations omitted).

Because we can resolve this claim on the prejudice prong, we assume without deciding the prosecutor's comments amounted to prosecutorial error. Applying the factors listed above, we, like the PCR court, find Ernst failed to show he was prejudiced by the error. First, the conduct was not pervasive as it was the only statement that qualified as vouching in the closing argument. The other statements made by the prosecutor were based on legitimate inferences such as how Campbell reacted after being shot, and inconsistencies between defense witnesses' testimony and statements to police. And the strength of the State's evidence was such that it showed a very low probability that Ernst's actions qualified as justification. Also, the jury was provided with standard instructions that

statements from the attorneys are not evidence and should not be considered as evidence. Ernst never presented evidence showing the jury failed to adhere to these instructions. Thus, Ernst did not prove he was denied a fair trial due to prejudice. And because we find Ernst cannot prove fair-trial prejudice under *Graves*, we conclude he also cannot prove the reasonable probability of a different outcome at trial if his counsel had objected, which means he cannot show *Strickland* prejudice. *See Coleman*, 907 N.W.2d at 142–43 (observing "even if the comments at issue amounted to prosecutorial misconduct, they were not severe and pervasive as to represent a persistent effort on the part of the prosecutor to present prejudicial information to the jury. As a result, there is nothing to suggest the decision of Coleman's counsel not to object to these statements from the prosecutor was 'so glaring that we are justified in saying so upon an examination of the record' or that the decision not to object resulted in prejudice" under the ineffective-assistance framework (citation omitted)).

*D. Counsel's Failure to Object to Defense Witness Testifying in Handcuffs and Jail Clothing.* Ernst claims counsel was ineffective by failing to object to a defense witness, appearing in court while in jail clothing and handcuffs. When a criminal defendant is within the presence of a jury, they are "entitled to the indicia of innocence in the presence of the jury." *State v. Bratcher*, No. 14-2058, 2016 WL 1677997, at *3 (Iowa Ct. App. Apr. 27, 2016) (quoting *State v. Wilson*, 406 N.W.2d 442, 448 (Iowa 1987)). "Shackling a defendant in front of a jury is inherently prejudicial." *Id.* But the witness was not the defendant in this case, Ernst was. A witness is not entitled to the same "indicia of innocence in the presence of the jury" as required of a defendant. *Wilson*, 406 N.W.2d at 448.

Defense counsel was aware of this difference and knew an objection would not succeed. Thus, counsel did not breach an essential duty by failing to object to the witness testifying in jail clothing.

*E. Counsel's Failure to Request a Spoliation Instruction.* Ernst claims his trial counsel were ineffective because they failed to request a spoliation instruction concerning a lost video Waterloo Police acquired from the New World Lounge. In January 2016, the State filed additional minutes of testimony stating that an officer watched a video from New World Lounge. After watching the video, the officer stated he placed it on an investigator's desk. The investigator testified at trial the video had been lost in the interim, and defense counsel was unable to view it. The investigator stated he and fellow officers attempted to locate the video, either on a DVD or flash drive, to no avail. He testified they were able to locate handwritten notes about the video made by the observing officer.

Spoliation instructions are "direction[s] to the jury that it [may] infer from the State's failure to preserve [evidence] that the evidence would have been adverse to the State." *State v. Hartsfield*, 681 N.W.2d 626, 630 (Iowa 2004) (second and third alterations in original) (quoting *State v. Vincik*, 398 N.W.2d 188, 795 (Iowa 1987)). The reason for this instruction is because "the fact finder may draw the inference that the evidence destroyed was unfavorable to the party responsible for its spoliation." *Id.* (quoting *State v. Langlet*, 283 N.W.2d 330, 333 (Iowa 1979)). "This inference is based on the rationale that a party's destruction of evidence is 'an admission by conduct of the weakness of [that party's] case.'" *Id.* (alteration in original) (quoting *Langlet*, 283 N.W.2d at 333). The inference of spoliation is not

applicable "when the destruction is not intentional." *Id.* (quoting *Langlet*, 283 N.W.2d at 333).

In order to justify a spoliation inference, there must be substantial evidence: "(1) the evidence was 'in existence'; (2) the evidence was 'in the possession or under control of the party' charged with its destruction; (3) the evidence 'would have been admissible at trial'; and (4) 'the party responsible for its destruction did so intentionally.'" *Id.* (quoting *Langlet*, 283 N.W.2d at 333). The testimony of the officer who watched the video and the investigator clearly establish the first two elements. It is assumed the video would be admissible, as it was relevant and probative to the case and there was testimony referring to it. The issue then is the fourth element, whether the video was destroyed intentionally.

There is no indication the State intentionally destroyed the video. Uncontested testimony shows the Waterloo Police Department mislaid the video and could not subsequently find it. The video was not lost on purpose, there was no spoliation inference, and the jury was not entitled to such an instruction. *See id.* Also, Ernst's trial counsel elicited testimony concerning the loss of the video to show the investigation was not thorough. Ernst's trial counsel did not fail to perform an essential duty in not requesting a spoliation instruction.

*F. PCR Counsel's Failure to Present Evidence Showing Defense Witnesses or Deposition Testimony would have Changed the Outcome of Trial.* Ernst claims his PCR counsel was ineffective because counsel "did nothing to contact witnesses" Ernst "listed as important to his defense." We conclude we do not have an adequate record to decide Ernst's claim of ineffective assistance against his PCR counsel. *See Goode v. State*, 920 N.W.2d 520, 526–27 (Iowa 2018)

(declining to address a claim that PCR counsel provided ineffective assistance raised for the first time on appeal from the PCR action because, without evidence to support the claim, "the record on appeal [was] inadequate to address the new claim of ineffective assistance of [PCR] counsel"). Accordingly, we will not consider this claim.

Because of the reasons above, we affirm the denial of Ernst's PCR application.

**AFFIRMED.**