STATE of Missouri, Respondent,

v.

William F. COOPER, Appellant.

No. WD33151.

Missouri Court of Appeals,
Western District.

Aug. 23, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Nov. 15, 1983.

Application to Transfer Denied
Dec. 20, 1983.

James W. Fletcher, Public Defender, Kansas City, Gary L. Gardner, Asst. Public Defender, for appellant.

William Cooper, pro se.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

DIXON, Judge.

Defendant appeals from his conviction of second degree murder. The jury assessed punishment at life imprisonment. Two points of error are briefed by defendant's counsel; seven more are raised in defendant's pro se briefs.

A witness Finley saw the defendant shoot the victim Hawkins with a shotgun. The shot was fired by defendant while he was riding in the back seat of a blue station wagon driving past the victim Hawkins' house where Hawkins was seated on a porch. The station wagon struck two vehicles as it was driven away. A station wagon found abandoned six blocks from the scene was connected with the collisions by paint samples. A spent shotgun shell in the rear seat of the station wagon matched spent shotgun shells found at the scene. All were fired from the same gun. There is no challenge to the sufficiency of this evidence to support the conviction.

█ The first issue briefed by counsel questions security measures taken by the trial court. On the morning of the fourth day of the five-day trial, the judge ordered that spectators be searched before being allowed into the courtroom. A metal detector was set up outside a "rear" door of the courtroom and access to the trial was confined to this door. Defendant's counsel objected to the procedure and asked for a mistrial on the grounds that it deprived defendant of his presumption of innocence and that defendant was denied his right to a public trial. This latter contention stems from the fact that no sign was posted on the main doors to the courtroom, which were locked so as to control entry through

the rear door, advising the public how to get in. Defendant cites *Globe Newspaper Co. v. Superior Court,* etc., 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), in support of this point. *Globe* involved a state statute that required mandatory closure of trials during the testimony of minor victims of sex-offense crimes. *Globe* is inapposite to the instant case. There is nothing in the record to indicate anyone was denied access to the trial upon encountering the locked door.

■ The claim that the screening process stripped defendant of the physical indicia of innocence is likewise without merit. Defense counsel did not take exception to the necessity for the screening procedure itself. The precaution was ordered after a colloquy in chambers among the judge, defense counsel, prosecuting attorney, and a state's witness named Finley. Finley had testified earlier in the trial that he saw defendant shoot Derwin Hawkins, the victim, from the back seat of a car as Hawkins sat on some steps in front of a house. Finley told the judge that following Finley's eyewitness testimony, several people came to his home and threatened to harm him if he did not change his testimony. Finley also claimed that defendant shot him prior to the trial and that a case was pending against defendant for the murder of another eyewitness to the Hawkins murder. In addition to this claim of witness intimidation, the court noted there had been an inordinate amount of coming and going by the spectators during the trial itself. All were in agreement that security precautions were appropriate under the circumstances; defendant's objection was that the jury was permitted to observe the metal detection search procedure when the panel filed into the jury box.

The screening procedure was conducted in as unobtrusive a manner as practicable. The metal detector was set up outside the courtroom at a door "a long ways from where the jury" was located. The jury did not enter through that door. The door was closed as soon as the jury was seated. In *State v. Davis,* 547 S.W.2d 482 (Mo.App. 1976), the jury was exposed to a dozen uniformed police officers in the lot where they boarded a bus, and in the corridors leading to the jury room. Further, there were metal detectors outside the courtroom. The security precautions were taken because the trial judge had heard of threats to both kill and free the accused. In upholding the court's refusal to grant a mistrial the court of appeals stated, "In taking security precautions care should be exercised to not create an atmosphere prejudicial to the accused, but it is a balancing of the circumstances, and though unnecessary measures should be avoided, such measures should be taken as appear to be reasonably necessary for the maintenance of order during the trial...." *Davis,* 547 S.W.2d at 489. The court's action in the case at bar was reasonable and great care was taken not to expose the jury unnecessarily to the screening procedure.

Defendant cites *United States v. Jackson,* 549 F.2d 517 (8th Cir.) *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977), and *United States v. Gambina,* 564 F.2d 22 (8th Cir.1977), for the proposition that any jury exposure to a metal detection screening procedure would "strip from the defendant the physical indicia of innocence." Neither of those cases can be read to make that assertion. There is no mention of the use of any electronic metal detecting device in *Gambina.* In *Jackson,* the court upheld the presence of several nonuniformed federal marshals inside and outside the courtroom and the use of a metal detecting device to screen spectators as neither undue nor beyond the trial court's discretion. Precautions taken by the trial court in the case at bar were similar to *Jackson* in that "the jury was carefully shielded from contact with or awareness of the security measures ..." 549 F.2d at 527. Any brief exposure to the sight or sound of the metal detector *outside* the courtroom through a door a "long way" from the jury box that lasted only as long as it took the jury to file in would not deprive defendant of his presumption of innocence.

■ The second point covered in defense counsel's brief concerns the following re-

marks made by the prosecuting attorney during closing argument:

> Now, at the outset, before I talk to you about the evidence, I want to cover one other aspect. You know, you are familiar with the problems. You read them in the paper, about witnesses, where they come from, how they are intimidated, what happens—

At this point the defendant objected. In a discussion at the bench, the judge sustained the objection on the ground there was no evidence in the case of witness intimidation. Defense counsel then asked for a mistrial, arguing that the security precautions observed the preceding day combined with the prosecutor's comments would permit the jury to infer that the defendant had intimidated witnesses. The judge denied the motion for mistrial, admonished the prosecutor to confine his argument to the evidence in the case, and made the following remarks to the jury:

> The objection by Mr. Simon is sustained. The jury is instructed to disregard the last statement by Mr. Bellemere, and Mr. Bellemere is advised that what occurred or what did occur *in other cases* is not material to this case.
>
> The purpose of final argument is to discuss the facts in the case that's pending and *not other cases.* So you will be guided accordingly.

(Emphasis supplied.) Defendant reiterates on appeal, after properly preserving the point in his new trial motion, that the prejudice could not be cured by the judge's action. The state does not argue that the comments were not erroneous, only that the remedy of mistrial was not required.

It is noted that the prosecutor was reprimanded both at the bench and in front of the jury. The court's direction to the jury was clear and helped to distract the jury's attention from the import of the prosecutor's comment attributed to it by the defendant. In the context of the court's admonishment as to "other cases," the comment was not at all likely to have caused the jury to infer that the defendant had intimidated the witnesses. A mistrial was not mandated under these circumstances. *See State v. Phelps,* 478 S.W.2d 304 (Mo.

1972); *State v. Martin,* 624 S.W.2d 879 (Mo. App.1981).

None of the issues raised in defendant's pro se briefs were preserved in his motion for new trial. The state has not responded to any of defendant's points.

■ Four of the points are related to the complaint and the information. Defendant claims that the associate circuit court failed to advise him of his right to counsel when he appeared before the court the day following his arrest. The transcript of this initial proceeding is not in the record on appeal. It was presumably the proceeding contemplated by Rule 22.07(a) and (b). The rule requires the court to inform the defendant of his right to counsel. Absent a record to the contrary, the presumption is that the court acted properly. Defendant was represented by privately retained counsel nine days later, when he signed a Waiver of Preliminary Hearing form, which was witnessed by his trial counsel. There is no claim by defendant that without the benefit of counsel's advice he made any disclosures or suffered any prejudice, even if his right to counsel was unknown to him during the nine days.

■ Defendant also claims the complaint was defective because it recites the incorrect statute number, no witnesses were shown endorsed, and the affiant lacked personal knowledge of the homicide. The complaint was signed by Floyd Burton, a police officer according to defendant's brief. Defendant thereafter waived preliminary hearing on advice of counsel and entered a plea of not guilty at his arraignment, where he was also represented by counsel. Under these circumstances, defendant waived any alleged deficiencies in the complaint. *State v. Herron,* 376 S.W.2d 192 (Mo.1964).

■ Defendant charges the information cites the incorrect statute number and date on which the murder occurred and did not list the state's material witnesses. The prosecutor, with the acquiescence of defense counsel, filed an amended information the first day of trial, correcting the statute number and date. Although no witnesses are listed on the original information, the amended information includes a list of the

state's witnesses. No objection was made to the inclusion of witnesses on the amended information when it was brought before the court. The correction of the statute citation and date were proper. Rule 23.08.

■ Defendant also asserts the court erred in admitting hearsay testimony. The first exchange about which defendant complains has to do with a drug purchase between the victim and defendant. The state's witness, Finley, and the victim exchanged some diamond rings with defendant for marijuana a month before the homicide. On cross-examination Finley stated he was not actually present at the time of the ring-marijuana transaction. The complete answer to defendant's complaint is that Finley never testified about anything that occurred during this initial exchange itself. He testified generally about the terms of the transaction. This testimony was within Finley's personal knowledge as Hawkins' partner in the transaction, and was therefore not hearsay.

■ The other instance of alleged hearsay occurred when defendant's counsel read a statement made by Finley to the police in order to impeach Finley's in-court testimony. In his police statement Finley claimed he knew nothing about the homicide from first hand knowledge. Thus, the police statement was offered not for the truth of its assertions, but for impeachment purposes, as was proper. It was offered on defendant's behalf and could not have prejudiced defendant if it were inadmissible—which it was not.

■ Defendant's remaining point turns on the admissibility of an automobile certificate of title. The certificate of title is prima facie evidence of title. *Dee v. Sutter,* 222 S.W.2d 541 (Mo.App.1949). Section 301.190(2), RSMo Supp 1983, requires that such a certificate be issued with the signature of the Director of Revenue and his seal of office. Even a copy of the certificate certified by the Director is admissible. Section 302.312, RSMo 1978. There is no merit in the contention.

The judgment of conviction is affirmed.

All concur.