STATE of Iowa, Plaintiff–Appellee,

v.

Brian Allen SHIPLEY,
Defendant–Appellant.

No. 87–492.

Court of Appeals of Iowa.

July 27, 1988.

James F. Whalen, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., and Jerry Vander Sander, Asst. Co. Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

HABHAB, Judge.

Defendant and Jeff Longfellow were charged in October 1986 with killing a sixty-two-year-old man while participating in a robbery. In December 1986, the defendant filed a motion for change of venue given the extensive publicity in the local Cedar Rapids media concerning this case. The district court overruled this motion in February 1987, but did allow defense counsel to submit a jury questionnaire regarding jury exposure to pretrial publicity. Defendant's renewed motion for change of venue on March 16, 1987, the day of trial, was also overruled. Voir dire did include an examination of each juror's exposure to prejudicial pretrial publicity.

On the morning of the trial, defense counsel received a phone call from the public defender's office that their office had received an anonymous death threat against Shipley. Based on this information, the trial judge required everyone entering the courtroom, including the attorneys, witnesses, and jurors, to be screened by use of a metal detector. This screening continued throughout the trial. The defendant's objection to the use of the metal detector was overruled.

Following defendant's conviction and sentence for first-degree murder, he filed this appeal.

### I.

Defendant reasserts his objection to use of the metal detectors, arguing that "the security procedures imposed by the trial court created such an atmosphere of fear and violence around his trial and created such a strong suggestion of dangerousness on the part of the defendant, that it violated his right to due process of law." The State disagrees with the defendant's assumption that the jury reacted negatively to the security utilized in this case and submits that additional courtroom security was necessary, that the use of metal detectors was not prejudicial to defendant, and that the defendant's due process right to a fair trial was not violated.

"Courts are entitled to take reasonably necessary precautions for the maintenance of order during the progress of the trial and for the detention and custody of the accused." *State v. Williams*, 217 N.W.2d 573, 574 (Iowa 1974). While it does not appear that this court has previously ruled on the propriety of the use of metal detectors at trial, we can survey other cases dealing with other courtroom measures. *See State v. Wilson*, 406 N.W.2d 442, 448–50 (Iowa 1987) (defendant required to wear leg shackles during trial); *State v. Ellis*, 350 N.W.2d 178, 183 (Iowa 1984) (jurors saw defendant manacled outside of the courtroom); *State v. Kile*, 313 N.W.2d 558, 562 (Iowa 1981) (jury members observed defendant in chains and witnesses in shackles outside of courtroom); *State v. King*, 256 N.W.2d 1, 11–13 (Iowa 1977) (judge possessed a revolver during trial and within sight of the jury); *State v. Williams*, 217 N.W.2d at 574 (an armed deputy was

present in the courtroom during trial). In each of these cases the court found that the defendant was not unfairly prejudiced by the jury's awareness of the extraordinary security measures employed.

Our supreme court has approached courtroom security cases "mindful of the fact that not all errors at trial, even those of constitutional stature, necessarily dictate a reversal." *State v. King,* 256 N.W.2d at 12 (*citing Chapman v. California,* 386 U.S. 18, 21–23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709 (1967)) (emphasizing that "an accused is only entitled to a fair trial, not a perfect one"). When assessing the due process implications of courtroom security, we recognize that:

> A trial judge ... has a problem of balancing fair trial demands with security and safety. No trial is perfect. A judge looking back over a trial is in a better position than we are to say whether a reasonable accommodation of the two interests has been achieved; the judge is thus given considerable discretion in ruling on motions involving issues of this kind.

*State v. Ellis,* 350 N.W.2d at 183 (*quoting State v. Kile,* 313 N.W.2d at 562).

A survey of cases from other jurisdictions reveals that courts considering the effect of using metal detectors at trial have uniformly held that this security practice does not violate a defendant's due process right to a fair trial. *See, United States v. Carter,* 815 F.2d 1230, 1231–32 (8th Cir. 1987) (use of a metal detector outside of courtroom upheld); *United States v. Kelly,* 551 F.2d 760, 767 (8th Cir.), *cert. denied,* 433 U.S. 912, 97 S.Ct. 2981, 53 L.Ed.2d 1097 (1977); *United States v. Jackson,* 549 F.2d 517, 526–27 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977); *United States v. Ferguson,* 758 F.2d 843, 854 (2d Cir.1985) (approving of extraordinary security measures, including presence of as many as two dozen plainclothes marshals, marshals driving jurors home at night, and metal-detecting device at entrance to courtroom); *United States v. Howell,* 514 F.2d 710, 714–15 (5th Cir.), *cert. denied,* 423 U.S. 914, 96 S.Ct. 220, 46 L.Ed.2d 143 (1975) (spectators, witnesses, and jurors were all asked to pass through a metal detector when entering the courtroom); *State v. Greenawalt,* 128 Ariz. 150, 167–68, 624 P.2d 828, 845–46 (1981) (spectators and, on occasion, jurors were screened with metal-detecting device); *People v. Bolla,* 114 Ill.App.3d 442, 451–53, 70 Ill. Dec. 118, 126, 448 N.E.2d 996, 1004 (1983) (walk-through metal detector used along with extra plain clothes agents); *State v. Myrick,* 228 Kan. 406, 411, 616 P.2d 1066, 1076–77 (1980) (everyone who entered courtroom was required to submit to inspection with a metal detector); *State v. Cooper,* 660 S.W.2d 184, 185–86 (Mo.App. 1983) (metal detector near rear door of courtroom); *State v. Davis,* 547 S.W.2d 482, 488–89 (Mo.App.1976) (uniformed police in corridors and metal detectors through which everyone entering courtroom passed); *Smith v. State,* 667 S.W.2d 836, 839 (Tex.App.1984), *rev'd on other grounds,* 703 S.W.2d 641 (Tex.Cr.App.1985) (metal detector and extra guards used).

The United States Supreme Court has recently held that the circumstances of a particular case may justify special courtroom security measures. *Holbrook v. Flynn,* 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (ruling that the presence of four uniformed and armed state troopers, sitting in first row behind the defendants in courtroom, did not violate the defendant's due process right to a fair trial). In *Holbrook,* the Court asked whether the security measures employed were the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial. *Holbrook v. Flynn,* 475 U.S. at 568, 106 S.Ct. at 1346, 89 L.Ed.2d at 534. If so, the practice must be subjected to "close judicial scrutiny," the State must establish the necessity of its use, and the court must weigh that necessity against the prejudice attributable to the practice. *Id.; see also State v. Wilson,* 406 N.W.2d at 449. If the security measure is found not to be inherently prejudicial, the defendant bears the burden of proving that actual prejudice resulted from its use. *Holbrook*

*v. Flynn,* 475 U.S. at 572, 106 S.Ct. at 1348, 89 L.Ed.2d at 537.

■ We find that the use of metal detectors in this case is not inherently prejudicial. We also find that defendant failed to meet his burden that actual prejudice resulted from the use of the detectors. Unlike shackling, this practice does not single out the accused or necessarily create a presumption that he is violent or dangerous. Accordingly, the defendant's constitutional rights to a fair trial were not violated.

## II.

On December 15, 1986, the defendant filed a motion for change of venue, asserting that "a majority of any jury panel called in Linn County would have been prejudiced and biased by the media coverage" of this crime. Attached as exhibits to defendant's motion were copies of three newspaper articles published in the Cedar Rapids Gazette on September 24, 25, and 26, and a copy of the victim's obituary published in the Gazette on September 25. An evidentiary hearing was conducted on January 21, 1987; at that time the defendant presented to the court two additional Gazette articles published December 19 and 24, and the scripts and video tapes of television news broadcasts aired on Cedar Rapids stations KCRG and KGAN on September 24 and 25. After review of the record made by defendant, the trial court found that "the coverage of the media [had] been of a factual nature ...; that the pretrial publicity [had] neither been extensive nor inflammatory"; and that the defendant had failed to establish the need for a change of venue. While the court overruled defendant's motion, the trial court did give defense counsel the leave to develop a short supplemental jury questionnaire concerning exposure to media coverage and familiarity with the case, to be distributed to potential jurors on the morning of trial.

On the morning of March 16, 1987, prior to the commencement of jury selection, the defendant filed a renewed motion for change of venue. In support thereof, the defendant attached four additional newspaper articles which, from the Gazette, three had appeared within a week of the trial date, and the fourth was published on the day trial began, March 16. Defendant's renewed motion was overruled by the trial court; the supplemental jury questionnaires were utilized to screen out those prospective jurors who were acquainted with the victim or had already formed a firm opinion of the defendant's guilt or innocence; voir dire and jury selection were completed. The defendant did not reassert his motion for venue change at any time during or after jury selection.

■ Iowa Rule of Criminal Procedure 10(10)(b) provides for change of venue when the trial court is satisfied "that such a degree of prejudice exists in the county in which trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selection from the county." A defendant seeking venue change bears the burden to establish that prejudice exists; this may be done through proof of actual prejudice or by showing that pretrial media accounts of the incident were so pervasive and inflammatory as to give rise to a presumption of prejudice. *See State v. Wilson,* 406 N.W. 2d 442, 445 (Iowa 1987); *State v. Spargo,* 364 N.W.2d 203, 207 (Iowa 1985); *State v. Cuevas,* 288 N.W.2d 525, 527 (Iowa 1980).

■ The granting or refusal of a change of venue for local prejudice in a criminal case rests exclusively in the trial court's sound discretion. *State v. Smith,* 219 Iowa 168, 172, 256 N.W. 651, 653 (1934). When challenge to the trial court's ruling is raised on appeal, this court engages in de novo review of the record, making an independent evaluation of the circumstances to determine whether the trial court abused its discretion. *State v. Wilson,* 406 N.W.2d at 445; *State v. Spargo,* 364 N.W.2d at 207; *State v. Chadwick,* 328 N.W.2d 913, 915 (Iowa 1983).

■ The trial court found, and we agree, that the newspaper articles and television news reports, while they did cover the crime, were neither unusually extensive nor inflammatory. The media coverage was factual in nature and did not indicate an opinion as to the defendant's guilt or innocence. Media accounts which are fac-

tual and informative in tone will not support a presumption of prejudice. *State v. Wilson,* 406 N.W.2d at 445 *(citing State v. Spargo,* 364 N.W.2d at 208).

■ The defendant asserts that several of the newspaper articles described him and the codefendant as parolees and that a September 25, 1986 Gazette article detailed his criminal record. Disclosure of a defendant's criminal history by the media does not entitle the defendant to a change of venue. *See State v. Wagner,* 410 N.W. 2d 207, 222 (Iowa 1987) ("Exposure to newsworthy events will not give rise to a presumption of prejudice."); *State v. Spargo,* 364 N.W.2d at 208 ("... it is well established that community knowledge of a defendant's prior criminal record does not create a presumption of prejudice"); *State v. Hickman,* 337 N.W.2d 512, 515 (Iowa 1983) ("Publicity about a defendant's prior criminal record does not per se disqualify jurors.").

"[To] the extent that particular jurors may be substantially prejudiced against a defendant, rigorous voir dire can be trusted to expose these prejudices." *State v. Wagner,* 410 N.W.2d at 211; *see also State v. Wilson,* 406 N.W.2d at 445 (finding that "[a]lthough the publicity [was] inflammatory and contain[ed] prejudicial material, it [did] not rise to the level of pervasive and inflammatory publicity that would deny the defendant a fair trial").

■ Based on the record before us, we cannot find that the trial court abused its discretion; nor has the defendant proven that a substantial degree of actual prejudice existed. The trial court, by implementing special juror questionnaires, ensured that a full inquiry was made into possible prejudice. In addition, defense counsel individually questioned all potential jurors who had been exposed to the pretrial publicity. Accordingly, we affirm the trial court's decision to overrule defendant's motion for change of venue.

AFFIRMED.