STATE of Iowa, Appellee,

v.

Darren David FARMER, Appellant.

No. 90–1467.

Court of Appeals of Iowa.

Aug. 27, 1992.

Donald L. Carr II of Scalise, Scism, Sandre, McConville, Miller, Holliday, Schwarz, Carr & Renzo, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., and Denver D. Dillard, County Atty., for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ., but decided en banc.

OXBERGER, Chief Judge.

Darren Farmer was romantically involved with Jade's mother. Jade was eighteen months of age. The State alleges Farmer shook Jade so severely that her death resulted. The State also alleges Farmer had sexually abused the child within a period of twenty-four to forty-eight hours before her death.

Farmer was charged with first-degree murder and first-degree sexual abuse. A jury found him guilty of the lesser-included offenses of involuntary manslaughter and second-degree sexual abuse. Farmer has raised several issues on appeal.

■ VENUE: We first consider whether the trial court erred in denying Farmer's motion for change of venue. Appellate review of an order granting or denying a change of venue is de novo and is subject to an abuse of discretion standard. *State v. Hickman,* 337 N.W.2d 512, 514 (Iowa 1983). Where a change of venue has been denied, the test is whether there is a reasonable likelihood the defendant could receive a fair trial in the county. *State v. Dague,* 206 N.W.2d 93, 95 (Iowa 1973). Although trial courts have discretion in determining whether to change venue, they should be more willing than in prior years to look favorably upon a motion for change of venue where there has been extensive pretrial publicity. *State v. Robinson,* 389 N.W.2d 401, 404 (Iowa 1986). A defendant may show either proof of actual prejudice or that pretrial media accounts were so pervasive and inflammatory as to give rise to a presumption of prejudice. *State v. Shipley,* 429 N.W.2d 567, 576 (Iowa App. 1988). Iowa Rule of Criminal Procedure 10(10)(b) allows a change of venue if the court is satisfied "that such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county...." When considering a change of venue issue, it must be kept in mind that mere exposure to news accounts does not prove a substantial likelihood of prejudice. *State v. Chadwick,* 328 N.W.2d 913, 916 (Iowa 1983). A defendant must show the pretrial publicity creates a substantial likelihood of prejudice in the minds of prospective jurors. *State v. Harris,* 436 N.W.2d 364, 367 (Iowa 1989). The crucial determination is whether, as a result of pretrial publicity or for other reasons, a substantial number of prospective jurors hold such fixed opinions on the merits of the case that they cannot impartially judge the issues. *Id.*

■ Farmer argues there was extensive news coverage in newspapers, radio and television which should have allowed him to change venue of the trial. The initial charge against Farmer was filed in November of 1989. Farmer's trial began on May 22, 1990, but a mistrial was declared. He was later brought to trial on July 9, 1990. On June 8, 1990, he filed for a change of venue. The trial court stated in its order denying the motion:

> The Court finds that the Defendant has failed to prove by any substantial evidence that there is any prejudice existing in Linn County which would result in an inability to pick a fair and impartial jury to hear the case of State v. Farmer. There is nothing in the record which would show the impact, if any, of the newspaper articles as it had to do with the attitudes of any prospective jurors.

In support of his motion for change of venue, Farmer introduced the testimony of Barbara Roorda, a resident of Linn County, and David Farmer, the father of the defendant. We find this testimony is insufficient to establish county wide prejudice. Upon review of the news articles in question, we agree with the trial court that a vigorous voir dire of prospective jurors was a sufficient safeguard to insure a fair and impartial jury. We, therefore, affirm the trial court's denial of Farmer's motion for change of venue.

PROSECUTORIAL MISCONDUCT

■ The defendant states he was denied a fair trial due to the following prosecutorial misconduct:

1. The prosecutors complained in front of the jury when making an evidentiary objection that the defense had not provided the State with pretrial discovery of certain defense evidence.

2. The prosecutor, when making certain objections, accused defense counsel of having misstated the record.

3. The prosecutor in his closing argument improperly referred to the defendant's statement as a confession. The remark was "this statement isn't literally a confession, but it is a skeleton of one."

4. The prosecutor in his closing argument attributed to defendant a statement made before the victim's death which indicated the defendant hated the victim.

 To prevail on a claim of prosecutorial misconduct, the defendant must not only prove misconduct occurred, but also that it prejudiced the defendant. *State v. Ruble*, 372 N.W.2d 216, 218 (Iowa 1985). We do not overturn trial court rulings in the absence of a showing of abuse of discretion. *State v. Love*, 302 N.W.2d 115, 119 (Iowa 1981). "Abuse of discretion is shown only when it is demonstrated that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Williams*, 315 N.W.2d 45, 55 (Iowa 1982) (quoting *State v. Trudo*, 253 N.W.2d 101, 106 (Iowa), *cert. denied*, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977)).

The trial court in effect told the jury the defendant's counsel had complied with pretrial discovery requirements. The trial court overruled the prosecutor's objections, implying the defense counsel had not misstated the record. The reference to a confession was not a prejudicial remark. The "hate" remark had been reported to the police during the investigation but later retracted.

We conclude the conduct of the prosecutor did not deny the defendant a fair trial.

 PRECLUDED TESTIMONY: Farmer next asserts the trial court erred in precluding certain testimony. He argues testimony regarding Angie Cummings' reputation for violence toward her daughter should have been admitted. We review for an abuse of discretion. *See State v. Wilson*, 406 N.W.2d 442, 447 (Iowa 1987). In order to show an abuse of discretion, one generally must show the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (1974)). A trial court's decision on the admissibility of evidence is within its discretion, subject to reversal only when that discretion has been abused. *State v. Chadwick*, 328 N.W.2d 913, 917 (Iowa 1983). Evidence offered by a defendant tending to incriminate another must be confined to substantive facts and create more than a mere suspicion that such other person committed the offense. *State v. Wilson*, 406 N.W.2d 442, 447 (Iowa 1987). We have thoroughly reviewed the defendant's offers of proof in the trial record regarding Angie Cummings' reputation for violence toward her daughter. We find the admission of this evidence could rise no higher than the creation of a mere suspicion incriminating the mother. The trial court did not, therefore, abuse its discretion in refusing admission of this evidence.

 Farmer next argues the trial court erred in refusing to admit evidence that the infant victim had a vaginal rash for a period of time before her death. Farmer argues that if the rash had developed to the extent that it included sores and bleeding, it was relevant to the issue regarding the general physical condition of the infant's vaginal area immediately prior to death. Three witnesses were prepared to offer testimony that Angie Cummings knew about the rash problem and did nothing to alleviate the problem. It is clear that one issue at trial was whether there had been penetration or abuse of the infant victim's vaginal area.

Ample evidence of sexual abuse was presented. The infant's sleeper and diaper were introduced as evidence and were blood stained. Four medical experts testified they observed redness, swelling, scratches, and bruising on and surrounding the victim's vagina and labia. The emergency room physician testified he observed blood and "bleeding" around the victim's vaginal region. He further testified the diaper rash on the victim was "negligible." The pediatrician who examined the victim shortly after she arrived at the hospital testified the vaginal injuries were probably caused by a hand. An expert physician, skilled in evaluation of sexual abuse injuries, testified the injuries took place within a few hours of the victim's admission to the hospital. Her opinion was based on the presence of blood, abrasions, redness, and

swelling. The medical examiner who conducted the autopsy testified the injuries to the vaginal area were "recent." The photographs taken upon admission to the hospital clearly show blood on the victim's vaginal area and upper thighs.

In addition, the State argues one of the witnesses admitted she had not seen any bleeding or scabs associated with the rash. Regarding the other two witnesses who would have testified to sores and bleeding, the State argues one witness is engaged to the victim's father and the other is the sister of the victim's father. We find the trial court did not err in refusing to admit the testimony of the three witnesses.

█ The defendant claims the trial court erred in precluding the expert witness James Cone from testifying regarding "shaken baby syndrome." In his brief, the defendant said:

In the present case there was a legitimate issue at trial regarding the death of Jade Horkheimer through shaken baby syndrome. Mr. Cone was familiar with this syndrome through study and work and was competent to give testimony through review of the medical records concerning the abuse and death of Jade Horkheimer. To have precluded his testimony in this area constituted an abuse of discretion.

The defendant does not specify any question he finds objectionable. His complaint is the the trial court precluded Mr. Cone from testifying about the shaken baby syndrome. We have exhaustively examined the record to determine what questions the court precluded Mr. Cone from answering. The following are the only questions we found bearing on the issue:

Q. Mr. Cone, as a social worker, what types of things do you look for in assessing whether you have a Shaken Baby Syndrome case?

MR. DILLARD: Again, I will object on the same basis that it calls for medical training and experience that this witness does not possess.

THE COURT: He can testify to anything other than that. You may continue.... He's not qualified in the opinion of this court to express any opinion on any medical part.

MR. CARR: That's not what I'm asking.

Q. Let me make it more focused for you. In a Shaken Baby Syndrome case, what type of history is important to you as a social worker in assessing whether the injuries fit an abuse situation in making that assessment?

MR. DILLARD: Well, again I would object because I believe that that calls for a medical opinion or conclusion in the form that it was asked.

THE COURT: I'm going to sustain that.

Q. As a social worker, what things do you historically look for in assessing a Shaken Baby Syndrome case?

Mr. Cone testified at length to the last question. He testified extensively on shaken baby syndrome matters. The difference in the two questions was the objectionable question asked Mr. Cone to assess the injuries. The court later stated the following:

The Court, after hearing an offer of proof, has ruled that Mr. Cone will not be permitted to give testimony which attempts to explain or interpret medical records, nor may he give any medical testimony or opinions of the same. Further that Mr. Cone will not be permitted to comment on or explain or interpret the medical records of Jade Horkheimer which are at the University of Iowa Hospitals. The Court has previously found that the defendant failed to prove that Mr. Cone had the required scientific or specialized knowledge to answer those questions.

As a general statement, issues concerning medical matters involving the body of human beings require scientific training. Mr. Cone was permitted to answer numerous questions on the shaken baby syndrome. The court did not permit Mr. Cone, a social worker, to answer questions that required medical training. We find no error in the above listed rulings. We do not hold that a social worker cannot express opinions on certain elements of the shaken baby syndrome within their realm of expertise. The problem in this case is the sub-

ject covers two areas of expertise, the medical knowledge and child abuse investigators. However, the questions are not precisely tailored to limit the answers to the proper area of expertise.

We have considered all other issues presented and affirm the trial court.

AFFIRMED.

All Judges concur, except SCHLEGEL and SACKETT, JJ., who dissent.

SCHLEGEL, Justice (dissenting).

I respectfully dissent.

In several respects I believe the defendant did not receive a fair trial.

While the nature of the case and of the pretrial publicity would tend to create prejudice, I do not believe the evidence presented was sufficient to show an abuse of discretion in the court's failure to order a change of venue.

On the issue of the prosecutor's misconduct, I believe there was ample evidence of intentional misconduct to require a reversal. If no message is sent, either by the trial court or the appellate courts, prosecutors may believe that no conduct on their part can cause a reversal. Such is the case here. The majority simply states: "We conclude the conduct of the prosecutor did not deny the defendant a fair trial." I believe the conduct was prejudicial to the defendant and was not cured by the actions of the trial court. The trial court pointed out the falsity of the statements of the prosecutor. I cannot easily excuse statements by any lawyer engaged in such a trial using false statements. While the court pointed out the falsity of the statements, it could not remove the prejudice in this inflammatory and emotional case.

I also believe the trial court abused its discretion in excluding evidence of the victim's mother's propensity toward violence toward her daughter. Farmer's acquaintance with the victim and her mother was very short. Other evidence might well have convinced the jury that Farmer was not the perpetrator. The evidence was not necessarily offered to implicate the mother, but it tended to show the possibility of other violence having caused the death of the victim. Farmer was entitled to show that.

In a case such as this, it is difficult to avoid a feeling of outrage. The defendant being charged is likely to become the object of that outrage upon the slightest evidence. It is not our function to determine the guilt or innocence of the defendant. It is our job to assure this defendant, and all others whose cases come before us, that there was a fair trial. I do not believe defendant received a fair trial in this case.

Finally, I believe the court was in error in excluding certain testimony of the expert, Cone. I believe the extent of his experience would qualify him to answer most of the questions propounded to him.

I would reverse for a new trial.

SACKETT, Justice (dissenting).

I dissent. The defendant appeals his conviction of involuntary manslaughter and second-degree sexual abuse. He raises a number of grounds for new trial. My review of the proceedings convinces me there were errors made at the trial court level that prejudiced the defendant's right to a fair trial. I would reverse the defendant's conviction and remand for a new trial.

This is a gut-wrenching case. An eighteen-month-old female child died allegedly from being shaken. She also had at some time been sexually abused. The night of her death she was in the care of the defendant. The child and her mother had lived with the defendant for a little more than a week. The couple started cohabiting shortly after they met. Their period of cohabitation started on November 9, 1989. The child died on November 18, 1989.

While the child died on the night the defendant took care of her, there is a dispute as to the time of the child's injury. If certain evidence would be believed, the jury could have found the injury did not happen while the child was in the defendant's care but could have been the result of conduct of another. There was no seminal fluid or semen or pubic hairs on the child or her clothing.

The child was taken to the hospital late at night, and the defendant was immediately questioned into the night for a two and one-half hour period. The officer questioning the defendant took notes of the interview, used the notes to prepare the statement the defendant signed early the next morning, and then the officer destroyed the notes.

Of the issues raised by the defendant, the ones I find most compelling are that the trial court erred in not allowing evidence of (1) the mother's past reputation for violence toward her child, (2) the large number of people who had access to the child, (3) the number of child care providers the mother employed, (4) the child had experienced vaginal rashes and bleeding, and (5) a number of bruises had been observed on the child.

The defendant attempted through several witnesses to introduce evidence of (1) the mother's reputation for violence, (2) observation of the mother's violent behavior, (3) the large number of child care providers the mother employed, (4) that slapping noises and baby cries were heard from the mother's apartment at times before the mother cohabited with the defendant, (5) on occasions prior to the defendant's involvement with the child, the child had rashes and bleeding in her vaginal area and bruis-ing, and (6) the mother had a number of parties in her residence.

This was an emotionally charged case because of the death of a young child. There were two issues for the jury to decide: (1) who caused the injuries that resulted in the child's death, and (2) who sexually abused the child? By excluding the above evidence, the record basically left the jury no alternative but to find the defendant was the perpetrator.

The evidence is very relevant to show the mother or another person may have caused the injuries, and another person sexually abused the child. Part of the excluded evidence was that the blood and bleeding used to diagnose the injury had been observed on the child prior to defendant knowing her. The proffered evidence was clearly relevant.

Furthermore, I think it was error to refuse to give the spoilation instruction where the police officer intentionally destroyed the notes he took during the two-hour interview with the defendant.