# IN THE COURT OF APPEALS OF IOWA

No. 18-0542
Filed June 19, 2019

**JOSHUA ANDREW POWELL,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Boone County, William C. Ostlund, Judge.

Joshua Andrew Powell appeals the denial of his application for postconviction relief. **AFFIRMED.**

Nathan A. Mundy of Mundy Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**VAITHESWARAN, Presiding Judge.**

A jury found Joshua Andrew Powell guilty of first-degree murder in connection with the strangulation of his wife. This court affirmed his conviction. *State v. Powell*, No. 13-1147, 2014 WL 4930480, at *1 (Iowa Ct. App. Oct. 1, 2014).

Powell filed a postconviction-relief application, raising several ineffective-assistance-of-counsel claims and two additional arguments that the court treated as ineffective-assistance claims.[1] Following an evidentiary hearing, the postconviction court denied the application in its entirety. Powell appealed.

Like the postconvicton court, we believe all the issues Powell raises must be reviewed under an ineffective-assistance-of-counsel rubric. The claims require proof that (1) counsel's performance was deficient and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our review of the record is de novo. *Goode v. State*, 920 N.W.2d 520, 523 (Iowa 2018).

## I.  *Failure to Seek a Change of Venue*

Powell contends his trial attorneys should have requested a change of venue and his attorney on direct appeal was ineffective in failing to raise the issue. In his view, the postconviction court rejected the claim based on counsels' "investigation and conversations with potential jurors in the community" but failed to consider the biases of the "actual jurors in the pool that was impaneled."

Iowa Rule of Criminal Procedure 2.11(10)(b) provides a mechanism for a venue change upon motion when "the evidence introduced in support of the motion [shows] that such degree of prejudice exists in the county in which the trial is to be

---

[1] Multiple applications were filed by Powell and his attorney. We will refer to them as a single application.

held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." "The question of when to seek a change of venue is, however, a matter of professional judgment about which experienced trial lawyers frequently disagree." *Fryer v. State*, 325 N.W.2d 400, 413 (Iowa 1982). "[D]efense counsel's failure to seek a change of venue does not reflect on competency, nor is it indicative of ineffectiveness." *Id.* (quoting *Karasek v. State*, 310 N.W.2d 190, 191 (Iowa 1981)). The defense attorneys' decision not to seek a change of venue was a calculated strategic choice made after consideration of Powell's standing in the community, the level of publicity, and knowledge of local jury outcomes. *See id.*

Powell's primary trial attorney testified she "couldn't find anybody to say anything bad about [Powell]." She said, "Everybody liked him." Her co-counsel seconded the opinion. She stated, "[J]ust with how positive his reputation was in the community, we actually had a leg up on that."

With respect to publicity, one of the attorneys stated, "There wasn't a lot of publicity" outside one town in the county. Counsel said that, although four or five jurors were stricken for cause based on their familiarity with the case, they did not have a chance to speak to the other potential jurors about the case and she did not see the number of strikes as overly significant.

As for outcomes, counsel testified, "[H]istorically we had more confidence in Boone County juries than we would have" had in juries from other counties. When asked whether in hindsight she would have reconsidered her decision not to seek a change of venue, she said, "Not really."

We conclude Powell's trial attorneys did not breach an essential duty in failing to move for a change of venue. It follows that Powell's appellate attorney was not ineffective in failing to raise the issue. We affirm the district court's denial of the ineffective-assistance-of-counsel claim.

## II. Failure to Investigate and Present Evidence of Diminished Capacity and Intoxication

Powell next contends his trial attorneys were ineffective in failing to present evidence in support of a diminished capacity or intoxication defense. "[I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (citation omitted).

We begin with the claimed failure to raise a diminished-capacity defense. "The common law defense of diminished responsibility 'permits proof of defendant's mental condition on the issue of defendant's capacity to form a specific intent in those instances in which the State must prove defendant's specific intent as an element of the crime charged.'" *Id.* at 869 (citation omitted). Powell's trial attorneys thoroughly analyzed the costs and benefits of raising this defense. They required Powell to undergo a psychiatric evaluation, and they considered the evaluator's diagnosis of intermittent-explosive disorder and its potential effect on the jury. They elected not to present the evaluation and diagnosis because the evaluation contained certain negative information about Powell, presentation of the defense would have allowed the State to obtain its own psychiatric evaluation of Powell, and the diminished-capacity defense may have steered the jury to second-

degree murder rather than the lesser offense of voluntary manslaughter. Powell's primary attorney summarized the key weakness of presenting the evaluation as follows:

> I think the state would have really used that against us quite a bit, and the picture that I wanted to paint of [Powell] at trial was that he was this calm, mild mannered person, which he always appeared to me to be. None of the witnesses ever saw him angry, throwing punches, anything like that. So that's who he was, and I wanted to have the jury understand that that was his—that what happened with his wife was just a complete lost it kind of manslaughter situation. If they had known about previous anger problems, I think it would have been made it even harder for us to get there.

Because Powell's attorneys thoughtfully considered the issue, we conclude they did not breach an essential duty in declining to present a diminished responsibility defense. *See Heard v. State*, No. 16-0723, 2018 WL 1631378, at *2 (Iowa Ct. App. Apr. 4, 2018) (finding no ineffective assistance in failing to present a diminished-responsibility defense where counsel "testified he reviewed a psychological evaluation of [the defendant] in preparation for a diminished-capacity defense").

We turn to the claimed failure to present an intoxication defense. Iowa Code section 701.5 (2015) states:

> The fact that a person is under the influence of intoxicants or drugs neither excuses the person's act nor aggravates the person's guilt, but may be shown where it is relevant in proving the person's specific intent or recklessness at the time of the person's alleged criminal act or in proving any element of the public offense with which the person is charged.

Powell's strangulation of his wife was essentially undisputed. As noted, the defense strategy was to gain a voluntary-manslaughter conviction rather than a first or second-degree murder conviction. As defense counsel stated, they wished

to "acced[e] to the cause of death" and "shift the focus away." According to defense counsel, an intoxication defense would not have advanced that strategy. In her view, intoxication would simply "take [the offense] down to [] second-degree murder, which carried a thirty-five year mandatory-minimum sentence." In addition, counsel lacked evidence to support an intoxication defense because they did not have "anybody who was going to testify that [Powell] was blacked out, stumbling drunk." *See State v. Guerrero Cordero*, 861 N.W.2d 253, 259–60 (Iowa 2015) ("Partial drunkenness does not make impossible the formation of said criminal object. Therefore, the intoxication or drunkenness must be to the extent that the designing or framing of such purpose is impossible."), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). Under these circumstances, we conclude counsel did not breach an essential duty in declining to present an intoxication defense. *See Troupe v. State*, No. 15-0678, 2016 WL 1661728, at *1–2 (Iowa Ct. App. Apr. 27, 2016) (finding no ineffective assistance where "trial counsel consulted with a psychiatrist in advance of trial in order to discern whether an intoxication defense was viable").

We affirm the postconviction court's denial of this ineffective-assistance-of-counsel claim.

### III.    *Failure to Investigate and Cross-Examine the Medical Examiner*

Powell argues his trial attorneys were ineffective in failing to challenge and effectively cross-examine the medical examiner. In particular, he contends counsel should have attempted to impugn the medical examiner's testimony that it could take two to five minutes to strangle a person to death. He also argues the attorneys should have questioned the medical examiner about a skin condition his

wife had that may have provided another explanation for some of her injuries and they should have asked the examiner about an injury to his forearm.

The medical examiner's testimony on the length of time for death by strangulation was as follows:

> [I]f those carotids are compressed and occluded, it only takes about five to ten seconds to pass out. However, the brain usually can survive for about six minutes without oxygen. That varies. It's thought that most people can die with strangulation or have injury . . . from which they cannot recover after some period of about two to five minutes. So we say that with strangulation it takes seconds to lose consciousness but minutes to die.

Powell's primary attorney anticipated the medical examiner's testimony. Prior to trial, she deposed the examiner and "did other research on strangulation and asphyxiation." She acknowledged "anything that's not just sudden—I mean, if its 30 seconds or a minute or 20 seconds . . . gives the person time to premeditate and stop doing what they're doing." But she said "that was always going to be a problem in the case for any charge, whether it be second degree, voluntary or anything else."

Powell's second attorney testified she did "quite a bit of research on journals and treatises and the medical/legal forensic and criminological fields trying to find anything on a study of what the length of time was for strangulation." She "didn't find any good studies."

Despite the absence of definitive studies on the time it would take to strangle someone to death, Powell's attorney cross-examined the medical examiner and effectively narrowed the scope of her testimony. Specifically, she asked the medical examiner, "[I]f there's less of a struggle, it's shorter to the period of time that you gave of that two to five minutes; it would be closer to the two than

the five?" The medical examiner responded, "If there's lesser of a struggle and the pressure is applied consistently, then that would be true."

On our de novo review, we are persuaded the medical examiner's testimony on the strangulation-by-death window was more equivocal than Powell suggests and left room for a finding of guilt on a lesser-included offense of first-degree murder. We also are persuaded Powell's attorneys prepared for her testimony and confronted the issue on cross-examination. We conclude counsel did not breach an essential duty.

We turn to Powell's argument that the medical examiner "incorrectly identified areas of psoriasis" on Powell's wife "as bruises or contusions" and his attorneys should have corrected the inaccurate testimony. Neither defense attorney recalled the skin condition of Powell's wife. The postconviction court concluded counsel's failure to address this medical condition was "reasonable trial strategy." The court reasoned:

> Even if some of the bruising or contusions found on [Powell's wife's] body were actually areas of psoriatic skin, that condition would not change the conclusions of the medical examiner regarding the cause of death, asphyxiation caused by strangulation, and the injuries [she] suffered to her upper eyelid, lower face, chin, inner lip, gums, lower lip, petechial hemorrhages, and brain swelling.

We agree with the court's conclusion and reasoning.

Finally, Powell argues his trial attorneys failed to question the medical examiner about contusions on his forearm that would have supported his statements of being hit by his wife. But, as will be discussed, the fact he was hit by his wife emerged in an officer's recounting of Powell's statements.

We conclude Powell's attorneys were not ineffective in their handling of these matters. We affirm the postconviction court's denial of the claim.

## IV. Failure to Raise Claimed Fifth Amendment Violation

Powell contends his trial and appellate attorneys were ineffective in failing to argue he invoked his Fifth Amendment right to counsel at the beginning of an interview with a police investigator. We included Powell's exchange with the investigator in our prior opinion:

> POWELL: It is . . . I guess before we get started, my biggest question, I don't . . . is it my interest to have an attorney . . . .
> [INVESTIGATOR]: That's . . . .
> POWELL: . . . or do I need one, I . . . .
> [INVESTIGATOR]: . . . definitely up to you.
> POWELL: I don't . . . .
> [INVESTIGATOR]: And I can go over those with you. So I mean you always have the right to an attorney, I mean you can . . . uh . . . ask for an attorney any time . . . uh . . . you can have that attorney now if you want it while we're doing the questioning or you can get one later, you know, they're free of cost if you can't afford one. Uh . . . it's totally up to you. Uh . . . like I said, my goal today is just to get your side of the story. Uh . . . I mean, we know what happened, you called 911 . . . uh . . . now I'm just trying to get the details 'cause I think that's important. But, you know, we can sit down for awhile if you wanna . . . uh . . . if you like how things are going, continue, if you don't we can stop at any time. I mean that's your rights, so.
> POWELL: Okay.
> [INVESTIGATOR]: However you wanna go.
> POWELL: I got nothing to hide. I just don't know it's, you know, in my best interest.
> [INVESTIGATOR]: Right. That's something you gotta think about. I mean, like I said, I . . . I've done this a lot . . . uh . . . and I know that, you know, we got our crime scene people down there doing their thing now and, you know, and the goal is to put the pieces together . . . .
> . . . .
> [Y]ou wanna explain what's going on to me, kinda talk . . . talk me through it, talk me through your relationship?
> POWELL: Yeah. That's fine.

*Powell*, 2014 WL 4930490, at *5.

Absent an unequivocal assertion of a right to counsel, an officer does not have a Fifth Amendment obligation to stop interrogating a suspect. *See Davis v. United States*, 512 U.S. 452, 459 (1994). In *Davis*, the Court concluded the statement, "Maybe I should talk to a lawyer" was insufficient to require cessation of questioning. *Id.* at 454, 462. The Court declined to extend precedent "to require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney." *Id.* at 459. Similarly, in *State v. Morgan*, 559 N.W.2d 603, 608 (Iowa 1997), the Iowa Supreme Court concluded the statement "I think I need an attorney" was not a successful invocation of the defendant's right to counsel.

Powell's reference to counsel was equivocal. Applying precedent, we conclude his trial attorneys breached no essential duty in failing to argue his Fifth Amendment right to counsel was violated. It follows appellate counsel was not ineffective in failing to raise the issue.

## V.  Failure to Challenge Sufficiency of Evidence on Malice Aforethought

Powell next contends his trial attorneys were ineffective in failing to challenge the sufficiency of the State's evidence on malice aforethought. Malice aforethought was defined for the jury as follows:

> "Malice aforethought" is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time. It is sufficient if it exists any time before the killing.

As noted, Powell does not dispute that he strangled his wife to death. The use of fists and strangulation supports a finding of malice aforethought. *See State v. Boeding*, 2016 WL 1130285, at *3 (Iowa Ct. App. Mar. 23, 2016) *(*finding sufficient

evidence to support malice aforethought based in part on testimony of forensic pathologist that the decedent died of strangulation); *Martin v. State*, No. 12-2240, 2014 WL 69542, at *9–10 (Iowa Ct. App. Jan. 9, 2014) ("[W]e conclude the use of fists and strangulation of a child is likewise action tending to show malice."); *cf. State v. Heinz*, 275 N.W. 10, 21 (Iowa 1937) ("The hands and fists of the defendant violently used to strangle and beat to death this six year old child constituted an instrument likely to produce death and were dangerous weapons."). But even if the act of strangulation does not alone establish malice aforethought, the jury could have considered Powell's statements to a police officer who arrived on the scene. Powell began by saying he thought he "killed her." Powell then told the officer he suspected his wife was cheating on him and planned to leave him. When he and his wife returned to the house following a wedding reception, she in fact attempted to leave and Powell "tried to stop her by putting his hand on the slider door." Powell said his wife hit him and he "tried to stop her from leaving again." Powell told the officer he was hit again and "all he remembers was drawing his hand back . . . with a fist closed." According to the officer, Powell remembered "washing his hands and blood off his hands in a sink." The officer found Powell's wife lying on the floor behind some chairs. "There was pooling of the blood in the face" and "bruising around the nose and the mouth area."

The officer's recounting of Powell's statements would have allowed a reasonable juror to find malice aforethought. Because substantial evidence supports a finding of malice aforethought, the failure of Powell's attorneys to challenge this element could not have been prejudicial. *See State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004).

## VI. *Failure to Challenge Trial Information*

Powell notes "[t]he trial information submitted in [his] case lacked the specific intent element required by case law to support an indictment for first-degree murder." In his view, his trial and appellate attorneys should have challenged the trial information on this ground.

Iowa Rules of Criminal Procedure 2.4 and 2.5 specify what should be included in an indictment and trial information. *See* Iowa Rs. Crim. P. 2.4(7) (identifying required contents of indictment), 2.5(5) (stating an information "shall be drawn and construed, in matters of substance, as indictments are required to be drawn and construed").

The trial information comported with these requirements. *See Sillick v. State*, No. 01-0284, 2002 WL 31015257, at *6 (Iowa Ct. App. Sept. 11, 2002). It named Powell (rule 2.4(7)(a)), identified the offense, the degree of the offense, and the statutory provision alleged to have been violated (rule 2.4(7)(b)), specified the date and county of the offense (rule 2.4(7)(c)), and provided a brief statement of the acts by which the offense was alleged to have been committed (rule 2.4(7)(d)).

One of Powell's attorneys conceded the trial information was adequate. She testified, "I think as long as the state cites the correct code section that's sufficient." She said that was the case even if the state omitted listing every element of the crime.

We conclude Powell's attorneys did not breach an essential duty in failing to challenge the sufficiency of the trial information. It follows appellate counsel

was not ineffective in failing to raise the issue.  We affirm the postconviction court's denial of the claim.

## VII.  *Failure to Strike Alternate Juror*

Powell argues his trial attorneys were ineffective in "failing to challenge the district court's abuse of discretion in denying their strike [of an alternate juror] for cause."  He asserts the "issue needs to be remanded to the district court for further development of the record."  On our de novo review, we disagree.

We begin with the relevant jury-selection proceedings.  During voir dire, the State and defense questioned three individuals in the jury pool about possible service as alternate jurors.  One of the three stated he knew of Powell and recognized "[m]ost of" the witnesses on the witness list.  He said he heard or read about the case and remembered details.  He also said he knew the brother of Powell's wife "most of" his life and the brother was a "good friend."  He said he would "hang out just like regular friends once, twice a week on and off through high school and college."  The potential juror agreed that, as the brother's confidante, he probably knew a lot of details about the case from the perspective of the brother. He stated he did not think he "could proceed unbiasedly."  While acknowledging he could still see Powell as "an innocent person," he said he did not "want it to come to light that" he "knew something beforehand and jeopardize the case in any way."  He simply did not "want to chance it."  He also stated he was a law enforcement officer in another county.

Powell's attorney moved to strike the potential juror for cause.  The State resisted.  At that juncture, the district court asked the potential juror if he could "set everything" he knew "about the case aside and judge the case just on the facts

presented in the courtroom and the instructions" given. The potential juror responded, "Yes, Your Honor." The court denied the request to have him stricken for cause.

After the court ruled, Powell's attorney obtained permission to ask the potential juror additional questions. In response to one, the juror recounted that the brother of Powell's wife was "just angry with the outcome because he thought of [Powell] as a brother. And this is something that really hurt [the brother] and he never thought . . . in a million years that it would happen." He reiterated that the wife's brother was a pretty close friend. He also said he knew Powell's wife for "probably ten years" and she was "a very sweet girl." He said he last spoke to the wife's brother about the case a month before trial. He characterized a relative of Powell's wife as a second mom.

In light of these additional statements, Powell's attorney renewed her request to have the potential juror stricken for cause. The district court again denied the request. Powell's attorney exercised one of her ten peremptory strikes to remove the potential juror. The State exercised one of its peremptory strikes to remove another potential alternate jurors. The third person was selected as an alternate juror, without objection.

At the postconviction hearing, Powell's primary trial attorney testified she was "dumbfounded" that the trial court did not strike the potential juror for cause. At the same time, she said she "was okay with" the jury she ended up with. The postconviction court concluded, "Even if the trial court erred in not granting the strike for cause," Powell did not establish prejudice. We agree.

Iowa Rule of Criminal Procedure 2.18(5)(k) authorizes a challenge to a potential juror "for cause" where the juror has "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." Counsel did her best to have the potential alternate juror stricken for cause on this ground, to no avail. She was forced to use a peremptory strike to remove the person.

But she had a strike to use, a key fact the Iowa Supreme Court considered in assessing non-*Strickland* prejudice. *See State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993). There, as here, the district court denied the defendant's challenge for cause, forcing the defendant to use a peremptory challenge. The court stated:

> The search for legal prejudice must therefore focus on the potential for prejudice that flowed from forcing defendant to use a peremptory challenge on [the juror] that might have been used to remove another juror. In the absence of some factual showing that this circumstance resulted in a juror being seated who was not impartial, the existence of prejudice is entirely speculative.

*Id.* The court held:

> [P]artiality of a juror may not be made the basis for reversal in instances in which that juror has been removed through exercise of a peremptory challenge. Any claim that the jury that did serve in the case was not impartial must be based on matters that appear of record. Prejudice will no longer be presumed from the fact that the defendant has been forced to waste a peremptory challenge.

*Id.* at 747.

As noted, Powell did not argue that the alternate juror who was seated or any other seated juror was biased. In the absence of a challenge to the jurors, *Neuendorf* dictates affirmance under a non-constitutional standard.

It follows that Powell could not establish constitutional or *Strickland* prejudice. *Cf. Dixon v. State*, No. 16-2195, 2018 WL 3471833, at *6 (Iowa Ct. App. July 18, 2018) (finding constitutional prejudice on an ineffective-assistance-of-counsel claim where an actually biased juror was seated). Because the biased juror was removed, Powell received a fair trial.

The supreme court's recent opinion in *State v. Jonas*, 904 N.W.2d 566, 568 (Iowa 2017), does not alter our opinion. There, the defendant asserted that "because he was forced to use a peremptory strike to disqualify a potential juror who should have been disqualified for cause, reversal [was] required even though the challenged potential juror was not seated and there [was] no specific showing of prejudice in the case." *Jonas*, 904 N.W.2d at 568. The defendant acknowledged "*Neuendorf* . . . [was] contrary to his position" but invited the court to "reconsider that precedent." *Id.* The court declined to overrule *Neuendorf*. *Id.* at 583. Instead, the court articulated a presumed-prejudice standard under the following limited circumstance:

> [I]in order to show prejudice when the district court improperly refuses to disqualify a potential juror under Iowa Rule of Criminal Procedure 2.18(5)(*k*) and thereby causes a defendant to expend a peremptory challenge under rule 2.18(9), the defendant must specifically ask the court for an additional strike of a particular juror after his peremptory challenges have been exhausted. Where the defendant makes such a showing, prejudice will then be presumed.

*Id.* (footnote omitted). The court concluded the defendant "did not identify an additional juror who the defense sought to remove from the jury through the exercise of an additional peremptory challenge" and, accordingly, could not take advantage of the presumed prejudice standard, but had to show actual prejudice. *Id.* at 584. Because the defendant failed to show actual prejudice, the court

concluded he could not succeed on appeal. *Id.* The same is true here. *Cf. State v. Mootz*, 808 N.W.2d 207, 226 (Iowa 2012) ("We therefore require automatic reversal whenever a defendant is denied the use of a peremptory challenge based on an erroneous interpretation of *Batson* and its progeny and the objectionable juror is improperly seated.").[2]

We affirm the postconviction court's denial of this ineffective-assistance-of-counsel claim.

## VIII. Stun Belt

Powell contends the trial court abused its discretion in requiring him to wear a stun belt during trial. He specifically argues, "[T]he State can provide no evidence . . . to show the necessity of forcing [him] to wear this device during the trial." In his view, counsel should have requested a hearing on the necessity of the belt.

"Courts are entitled to take reasonably necessary precautions for the maintenance of order during the progress of the trial and for the detention and custody of the accused." *State v. Shipley*, 429 N.W.2d 567, 568 (Iowa Ct. App.

---

[2] That said, there is little doubt the potential juror should have been stricken for cause. In *Jonas*, the court cited "authority for the proposition that when a potential juror at the outset of voir dire expresses bias or prejudice unequivocally, the potential juror should be disqualified for cause notwithstanding later, generalized statements the potential juror could be fair." *Jonas*, 904 N.W.2d at 571. The potential juror in this case arguably made an unequivocal assertion of bias before he was rehabilitated. Although his bias stemmed from a friendship rather than one of the impermissible factors identified in *Jonas*, the postconviction court aptly pointed out that *Jonas* "calls into question the practice of judges rehabilitating jurors who express bias." *See id.* at 575 ("Where a potential juror initially repeatedly expresses actual bias against the defendant based on race, ethnicity, sex, or sexual orientation, both in a pretrial questionnaire and in voir dire, we do not believe the district court can rehabilitate the potential juror through persistent questioning regarding whether the juror would follow instructions from the court.").

1988) (citing *State v. Williams*, 217 N.W.2d 573, 574 (Iowa 1974)). A security practice such as shackling of a defendant which is "inherently prejudicial" may warrant "close judicial scrutiny." *Id*. at 569; *see also State v. Wilson*, 406 N.W.2d 442, 449 (Iowa 1987) ("It is clear that requiring a defendant to appear in shackles before a jury is inherently prejudicial.").

Under the circumstances of this case, the precaution of fitting Powell with a stun belt underneath his clothing was not an "inherently prejudicial" practice requiring "close judicial scrutiny." Powell's primary attorney testified the belt worked to Powell's advantage because he "did not have the deputy hovering over him," she and Powell "were able to discuss things privately," and Powell was free to move about without having a deputy following him. She confirmed that Powell did not express any distress or indicate he was unable to speak to her at trial because of the belt. *Cf. State v. Wilmer*, No. 06-1339, 2007 WL 4322212, at *5 (Iowa Ct. App. Dec. 12, 2007) (noting district court "did not cite reasons for requiring" the defendant to wear a "brace during trial except that it was the sheriff's standard operating procedure and the court would not interfere with that policy").

Powell's second attorney agreed Powell "didn't seem to be out of sorts about" the belt. She said she did not hear "any complaints that the stun belt was worrying him." *See Houk v. State*, No. 15-1976, 2017 WL 514402, at *2 (Iowa Ct. App. Feb. 8, 2017) (noting defendant "did not express any concerns about the belt during trial"). On our de novo review of the record, we conclude counsel did not breach an essential duty in failing to request a hearing on the issue.

We affirm the postconviction court's denial of Powell's postconviction-relief application.

**AFFIRMED.**